415 So.2d 724 (1982)
STATE of Florida, Petitioner,
v.
Elsie Virginia BOBBITT, Respondent.
No. 59955.
Supreme Court of Florida.
June 24, 1982.
Jim Smith, Atty. Gen., and Wallace E. Allbritton, Asst. Atty. Gen., Tallahassee, for petitioner.
Thomas S. Keith and Nancy A. Daniels, Asst. Public Defenders, Second Judicial Circuit, Tallahassee, for respondent.
ALDERMAN, Justice.
We have for review the decision of the District Court of Appeal, First District, in State v. Bobbitt, 389 So.2d 1094 (Fla. 1st DCA 1980), holding that the "castle doctrine" or privilege of nonretreat in the home applies even where co-occupants, both legally residing in the home, are involved. This decision expressly and directly conflicts with the Fourth District's decision in Conner v. State, 361 So.2d 774 (Fla. 4th DCA 1978), cert. denied, 368 So.2d 1364 (Fla. 1979), holding that where the assailant and the victim are both legal occupants of the same home, the privilege of nonretreat does not apply and the defense-of-the-home instruction need not be given. We agree with the Fourth District and hold that when an assailant and the victim are legal occupants of the same home, the "castle doctrine" does not apply. We therefore quash the decision of the First District.
*725 Elsie Bobbitt was charged with second-degree murder of her husband and was found guilty by a jury of manslaughter. Her husband, who was legally residing with her, attacked her in their home without provocation, and she shot him. She moved for a new trial on the basis that the trial court erroneously failed to instruct the jury that one unlawfully attacked in her own home has no duty to retreat. The instruction she requested provided:
One unlawfully attacked in his own home or on his own premises has no duty to retreat and may lawfully stand his ground and meet force with force, including deadly force, if necessary to prevent imminent death or great bodily harm to himself or another, or to prevent the commission of a forcible felony.
The trial court did instruct the jury as follows on the duty to retreat prior to the use of deadly force:
If attacked by another, even though the attack is wrongful, he has the legal duty to retreat if by doing so he can avoid the necessity of using deadly force without increasing his own danger, but a person placed in a position of imminent danger of death or great bodily harm to himself by the wrongful attack of another has no duty to retreat if to do so would increase his own danger of death or great bodily harm.
Agreeing with Bobbitt that it had reversibly erred in failing to give her requested instruction as to the privilege of nonretreat, the trial court granted her motion for new trial.
The State appealed to the First District Court of Appeal and contended that the requested instruction on the exception to duty to retreat did not apply because the victim was not an intruder. Placing much reliance on our decision in Hedges v. State, 172 So.2d 824 (Fla. 1965), the district court disagreed and held that the law did not require that respondent retreat when attacked in her home prior to acting in self-defense and that the jury should have been instructed that Bobbitt had no duty to retreat. It decided that the privilege of nonretreat applies regardless of whether legal co-occupants or intruders are involved. Having determined that there was no duty on the part of Bobbitt to retreat and, therefore, that any finding by the jury regarding failure to retreat was irrelevant, the First District considered in this light whether, as a matter of law, the evidence supported the manslaughter conviction in view of Bobbitt's plea of self-defense. It held that it did not, and it reversed the conviction and remanded with directions to discharge Bobbitt.
In our early decision of Pell v. State, 97 Fla. 650, 122 So. 110 (1929), we held that where one is not the aggressor and is violently assaulted on his own premises by a trespasser, he is not obliged to retreat but may stand his ground and use such force as necessary to save his life or to save himself from great bodily harm. Quoting from our earlier decision of Danford v. State, 53 Fla. 4, 43 So. 593 (1907), we said:
"It cannot be denied that it is the duty of a party to avoid a difficulty which he has reason to believe is imminent, if he may do so without apparently exposing himself to death or great bodily harm (Stafford v. State, 50 Fla. 134, 39 So. 106; Snelling v. State, 49 Fla. 34, 37 So. 917; Peadon v. State, 46 Fla. 124, text 135, 35 So. 204), and that whatever qualification this principle may in application have will depend upon the circumstances of each particular case. Allen v. United States, 164 U.S. 492, text 498, 17 S.Ct. 154 [41 L.Ed. 528]; Wharton on Homicide (2d Ed.) Sec. 485. For instance, a man violently assaulted in his own house or on his premises near his house is not obliged to retreat, but may stand his ground and use such force as may appear to him as a cautious and prudent man to be necessary to save his life or to save himself from great bodily harm. Allen v. United States, supra. A person whose life has been threatened is not obliged to quit his business to avoid a difficulty. Ballard v. State, 31 Fla. 266, 12 So. 865. But he cannot lie in wait for his adversary. Smith v. State, 25 Fla. 517, 6 So. 482. In cases where a combat is mutually sought, *726 the duty of retreating seems to apply to both parties, for both being in the wrong neither can right himself without retreating. I Bishop's New Cr. Law, Secs. 869, 870."
Pell v. State, 122 So. at 116.
Much later in Hedges v. State, we concluded that there was no duty to retreat on the part of the defendant who, while in her home, was attacked by her paramour. Up until the time of the attack the paramour had been an invitee on the premises, not a legal co-occupant of the premises. Thereafter, his initial lawful presence in Hedges' home was rendered unlawful by his assault upon her. We rejected the State's contention that the privilege of nonretreat in the home is not available when the attacker "does not enter as a trespasser." 172 So.2d at 826 (emphasis added). We were not, however, confronted with nor did we resolve the question now presented for our resolution.
Although in Watkins v. State, 197 So.2d 312 (Fla. 4th DCA 1967), the Fourth District decided that the trial court had erred in refusing to charge the jury on the doctrine of non-necessity of retreat where the defendant killed her common-law husband in the dwelling in which they both resided, it later expressly receded from this expanded version of the castle doctrine in Conner v. State. The emphasis in Conner is on the sanctity of human life. The Fourth District noted that in its original applications, the castle doctrine had in view only attacks from external aggressors. We agree with the following rationale expressed by Judge Letts, speaking for the Fourth District in Conner:
[W]e see no reason why a mother should not retreat from her son, even in her own kitchen. Such a view does not render her defenseless against a member of her family gone berserk, because the instruction on retreat ... concludes, "but a person placed in a position of imminent danger of death or great bodily harm to himself by the wrongful attack of another has no duty to retreat if to do so would increase his own danger of death or great bodily harm."
361 So.2d at 776.
We hold that the privilege not to retreat, premised on the maxim that every man's home is his castle which he is entitled to protect from invasion, does not apply here where both Bobbitt and her husband had equal rights to be in the "castle" and neither had the legal right to eject the other. As Judge Letts pointed out in Conner, this holding does not leave an occupant of a home defenseless against the attacks of another legal co-occupant of the premises since "a person placed in imminent danger of death or great bodily harm to himself by the wrongful attack of another has no duty to retreat if to do so would increase his own danger of death or great bodily harm." Fla.Std.Jury Instr. (Crim.), 2d ed., p. 64. This instruction was properly given the jury in the present case.
Accordingly, we quash the decision of the district court and remand for further proceedings consistent with this opinion.
It is so ordered.
SUNDBERG, C.J., and ADKINS and McDONALD, JJ., concur.
OVERTON, J., dissents with an opinion, in which BOYD, J., concurs.
OVERTON, Justice, dissenting.
I strongly dissent. The majority opinion holds that a wife who claims that she killed her husband in self-defense in the home is not entitled to a jury instruction that she had no duty to retreat under the castle doctrine. At the same time, the opinion recognizes that the opposite is true for a woman who claims that she killed her paramour in self-defense, whom she had invited into her home, reaffirming that she is entitled to the castle doctrine jury instruction and that she had no duty to retreat before using deadly force. The opinion distinguishes the two situations upon the basis that in the first situation the assailant is a cotenant and in the second the assailant is an invitee. I would treat cotenants, other family members, and invitees the same and *727 would hold, as to these types of antagonists, that one assailed in one's own home has only a limited duty to retreat.
Present law is clear that a person attacked in his home by an intruder has no duty to retreat and is entitled to the "castle doctrine"/no-duty-to-retreat jury instruction. Our current criminal standard jury instructions contain the following language regarding the issue of self-defense:
In deciding whether defendant was justified in the use of force likely to cause death or great bodily harm, you must judge [her] by the circumstances by which [she] was surrounded at the time the force was used. The danger facing the defendant need not have been actual; however, to justify the use of force likely to cause death or great bodily harm, the appearance of danger must have been so real that a reasonably cautious and prudent person under the same circumstances would have believed that the danger could be avoided only through the use of that force. Based upon appearances, the defendant must have actually believed that the danger was real.
The defendant cannot justify [her] use of force likely to cause death or great bodily harm unless [she] used every reasonable means within [her] power and consistent with [her] own safety to avoid the danger before resorting to that force.
The fact that the defendant was wrongfully attacked cannot justify [her] use of force likely to cause death or great bodily harm if by retreating [she] could have avoided the need to use that force. However, if the defendant was placed in a position of imminent danger of death or great bodily harm and it would have increased [her] own danger to retreat, then [her] use of force likely to cause death or great bodily harm was justifiable.
If the defendant was attacked in [her] own home or on [her] own premises, [she] had no duty to retreat and had the lawful right to stand [her] ground and meet force with force, even to the extent of using force likely to cause death or great bodily harm, if it was necessary to prevent death or great bodily harm to [herself] or another.
See Standard Jury Instruction 3.04(d) (emphasis supplied). The italicized portion of the above instruction embodies the so-called castle doctrine which the majority has ruled not applicable to respondent-wife in the instant case.
This Court has previously expressed the view that the castle doctrine is applicable when "the attacker does not enter as a trespasser" but is an invitee. Hedges v. State, 172 So.2d 824, 826 (Fla. 1965). In Hedges, the woman defendant was attacked by her paramour, whom she had invited into her home. The instant majority opinion refuses to apply Hedges holding that, because the wife's assailant was her cotenant husband, she is not entitled to the castle doctrine instruction. This places the wife in the same position as if the altercation had occurred in a public place.
It has been a basic premise in our law that the home is a special place of protection and security. The castle doctrine emanated from this premise, and a majority of jurisdictions in this country have adopted the castle doctrine exception. In Rippie v. State, 404 So.2d 160, 161-62 (Fla. 2d DCA 1981), Judge Boardman set forth a historical background and legal basis for the doctrine, stating:
Many jurisdictions, including Florida, have expanded the "castle doctrine" to permit its use even when the attacker is not an intruder, Hedges v. State, 172 So.2d 824 (Fla. 1965), and even when he is a co-occupant, Watkins v. State, 197 So.2d 312 (Fla. 4th DCA 1967). See also State v. Phillips, 38 Del. 24, 187 A. 721 (1936); State v. Leeper, 199 Iowa 432, 200 N.W. 732 (1924); People v. Tomlins, 213 N.Y. 240, 107 N.E. 496 (1914); State v. McPherson, 114 Minn. 498, 131 N.W. 645 (1911); Thomas v. State, 583 S.W.2d 32 (Ark. 1979); State v. Browning, 28 N.C. App. 376, 221 S.E.2d 375 (1976); People v. Garrett, 82 Mich. App. 178, 266 N.W.2d 458 (1978); State v. Grantham, 224 S.C. 41, 77 S.E.2d 291 (1953); Ison v. State, 252 Ala. 25, 39 So.2d 249 (1949). Judge *728 Cardozo in the Tomlins case stated his reasoning as follows:
It is not now and never has been the law that a man assailed in his own dwelling is bound to retreat. If assailed there, he may stand his ground and resist the attack. He is under no duty to take to the fields and the highways, a fugitive from his own home. More than 200 years ago it was said by Lord Chief Justice Hale (1 Hale's Pleas of the Crown, 486): In case a man "is assailed in his own house, he need not flee as far as he can, as in other cases of se defendendo, for he hath the protection of his house to excuse him from flying, as that would be to give up the protection of his house to his adversary by flight." Flight is for sanctuary and shelter, and shelter, if not sanctuary, is in the home.
107 N.E. at 497. And in Jones v. State, 76 Ala. 8, 14 (1884), it was aptly inquired: "`Why ... should one retreat from his own house, when assailed by a partner or cotenant, any more than when assailed by a stranger who is lawfully upon the premises? Whither shall he flee, and how far, and when may he be permitted to return?'"

The Conner court [361 So.2d 774 (Fla. 4th DCA 1978), cert. denied, 368 So.2d 1364 (Fla. 1979)], however, chose to recede from the expanded version of the "castle doctrine" it had espoused in Watkins and held that "where both the antagonist and the assailed are legal occupants of the same `castle,' neither one having the legal right to eject the other, the defense of home instruction need not be given." Conner, supra, at 776. A few other jurisdictions are in accord with Conner. See State v. Crawford, 66 W. Va. 114, 66 S.E. 110 (1909); State v. Grierson, 96 N.H. 36, 69 A.2d 851 (1949); State v. Lamb, 134 N.J. Super. 575, 342 A.2d 533, aff'd, 71 N.J. 545, 366 A.2d 981 (1976); Commonwealth v. Walker, 447 Pa. 146, 288 A.2d 741 (1972).
(Emphasis supplied.) The Second District Court of Appeal in Rippie rejected the Fourth District Court of Appeal's decision in Conner but did not fully embrace the castle doctrine. It held that, where the assailant is a cotenant in the home, there should be a limited duty to retreat. The Second District held that such a duty should not, however, mandate that the person assailed must retreat from the dwelling house proper. I agree. The Second District's solution is more reasonable than the illogical distinction between a cotenant and an invitee adopted by the majority.
Under the majority opinion, a woman killing her paramour in her home has more protection under the law than a woman who kills her husband in her home. More difficult still to understand is the application of the majority's rule to the situation where a mother is attacked in her home by a nineteen-year-old son. If the son is living in the home, the mother has a duty to retreat before she can use deadly force, but, if the son is not residing in the home, the mother has no duty to retreat before such force is used. This result and the majority's rule is in fact a minority position which does not recognize the realities of life.
Human life is precious, and deadly combat should be avoided if at all possible when imminent danger to oneself can be avoided. A limited duty to retreat, however, as suggested by the Second District Court of Appeal in Rippie, is, I think, an appropriate middle ground that recognizes both the duty to retreat and the sanctity of the home. To achieve this purpose, I would adopt an additional jury instruction when the assailant in one's home is an invitee, a cotenant, or a family member, to provide as follows:
If the defendant was attacked in [his/her] own home, or on [his/her] own premises, by a cotenant, family member, or invitee, [he/she] has a duty to retreat to the extent reasonably possible but is not required to flee [his/her] home and has the lawful right to stand [his/her] ground and meet force with force even to the extent of using force likely to cause death or great bodily harm if it was necessary to prevent death or great bodily harm to [himself/herself] or another.
*729 This instruction would cure the artificial legal distinctions and disparate results created by the majority decision.
In disposing of the instant case, I would find that Hedges was the law at the time of the trial for invitees and cotenants and that it should have controlled. I agree with the trial judge and a unanimous district court of appeal that respondent was entitled to the castle doctrine instruction and should have a new trial. I would approve the district court decision and direct the use of the suggested limited duty-to-retreat jury instruction in the retrial.
BOYD, J., concurs.