454 So.2d 596 (1984)
Emory Jack BROWN, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 82-1607.
District Court of Appeal of Florida, Fifth District.
June 28, 1984.
Rehearing Denied August 22, 1984.
James B. Gibson, Public Defender, and Michael S. Becker, Asst. Public Defender, Daytona Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Shawn L. Briese, Asst. Atty. Gen., Daytona Beach, for appellee.
*597 ORFINGER, Chief Judge.
The defendant appeals from a judgment of conviction for second degree murder, contending that the trial court erred in failing to grant defendant's motion for judgment of acquittal at the close of the State's case. We agree and reverse the judgment, and direct that defendant be discharged.
Defendant was charged with the second degree murder of Charles Williams who was killed during a fracas involving Williams and the defendant. There were numerous eyewitnesses to the fight, and the State called several of them to testify. There was no material dispute in the testimony of the State's witnesses to the incident.
The State's evidence indicated that on the night of the incident David Brown, appellant's brother, became involved in a fight with Williams (the victim) outside the Palms Bar, in which Williams was the aggressor. Williams was drunk and very violent.[1] David Eady, a bystander, tried to break up the fight but when he was unable to do so, he ran into the bar where defendant Emory Brown was shooting pool, to get his help in breaking up the fight. Eady told defendant that Williams was beating the defendant's brother to death.
Emory Brown and Eady rushed outside where they found Williams mauling and choking David. With difficulty, Emory managed to break Williams away from David, and when he did so, Williams immediately attacked Emory, knocked him down, jumped on top of him and bit him severely. Emory was trying to break off, but Williams would not do so, and he was trying to inflict damage to defendant's body, while telling defendant that he (Williams) was going to kill the defendant. Williams lifted weights and was very strong. David thought his brother's life was in danger so he ran to a friend's car, retrieved a gun he knew was there and returned to the scene of the fight.
By this time defendant had managed to get away from Williams and started backing up to where his brother David and others were standing, with Williams coming at him all the time, repeating his threat to kill defendant. David put the gun in defendant's hand and defendant continued to back up, admonishing Williams to stop, but Williams continued to come at defendant. Defendant fired a shot into the ground, telling Williams to stay back and to leave him alone, but Williams kept coming, hands balled up in fists, clearly angry. They were very close together when the second (and fatal) shot was fired. All the witnesses agreed that defendant was backing up during all this time, pleading with Williams to stay away, and that there was no room for defendant to turn and run because Williams was very quick and very strong and was virtually on top of defendant when the last shot was fired. The witnesses further all testified that Williams would have jumped defendant had defendant turned to run.[2]
Florida Statute § 782.02 (1981) provides:
Justifiable use of deadly force.  The use of deadly force is justifiable when a person is resisting any attempt to murder such person or to commit any felony upon him or upon or in any dwelling house in which such person shall be.
Second degree murder is defined in Florida Statute § 782.04(2) thusly:
The unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual, shall be murder in the second degree and shall constitute a felony of the first degree, punishable by imprisonment for a term of years not exceeding life or as provided in section 775.082 ...
*598 The State's evidence clearly does not support the charge of second degree murder, because there is no showing that defendant acted with a depraved mind regardless of human life, an indispensable element of the crime of second degree murder. See e.g., Pierce v. State, 376 So.2d 417 (Fla.3d DCA 1979). The more difficult question is whether there is a reasonable basis in the evidence to support a reduced charge of manslaughter, or whether the evidence clearly reflects the homicide to be justifiable.
Appellant contends that he acted in self-defense and that even if his belief in danger to his person was not "well grounded," but simply reasonable in light of the surrounding circumstances, the State's evidence clearly demonstrates self-defense. See Pinder v. State, 27 Fla. 370, 8 So. 837 (1891). Appellant recognizes that ordinarily the question of self-defense is one of fact to be determined by the jury, but argues that if the evidence is legally insufficient to support a conviction because the defendant's theory of self-defense has been established as a matter of law, the trial judge should grant a motion for directed verdict.
This court, as with other courts, has recognized the principle that ordinarily the question of whether a homicide was committed in justifiable self-defense is a question for the jury. McCauley v. State, 405 So.2d 1350 (Fla.5th DCA 1981). On the other hand, when the State fails to carry its burden of proof, or where the State's evidence clearly shows that a homicide was committed in self-defense, courts of this State have not hesitated to reverse jury convictions and to discharge the wrongfully convicted defendant. While the defendant may have the burden of going forward with evidence of self-defense, the burden of proving guilt beyond a reasonable doubt never shifts from the State, and this standard broadly includes the requirement that the State prove that the defendant did not act in self-defense beyond a reasonable doubt. Bolin v. State, 297 So.2d 317 (Fla.3d DCA), cert. denied, 304 So.2d 452 (Fla. 1974). See also State v. Bobbitt, 389 So.2d 1094, 1098 (Fla.1st DCA 1980), rev'd on other grounds, 415 So.2d 724 (Fla. 1982).
In Bozeman v. State, 106 Fla. 270, 143 So. 236 (1932), the court reviewed the evidence which resulted in the manslaughter conviction of the appellant and found the evidence wanting. In reversing the conviction the court said:
On writ of error the transcript of the evidence in the bill of exceptions contained in the record does not support either of the charges made in the information.

But the evidence does show a fatal cutting of the deceased by the defendant with a small pocketknife in self-defense while the defendant was being held on the ground by the deceased in a threatening and violent manner after the deceased apparently without provocation had approached and cursed the defendant and pulled him from an automobile, getting him on the ground after a combat; both parties having theretofore, during a night's outing, been drinking and talking roughly to each other in a seemingly friendly way. (Emphasis supplied).
Id. at 237.
In Snipes v. State, 154 Fla. 262, 17 So.2d 93 (1944) (en banc), a majority of the court agreed that the evidence failed to sustain the verdict of first degree murder (or of second degree murder). However, the majority could not agree whether or not there was sufficient evidence to sustain even a conviction of manslaughter. The case was therefore sent back for a new trial. Following a second trial, the court in Snipes v. State, 156 Fla. 85, 22 So.2d 506 (1945) (en banc) reviewing the evidence and finding it to be essentially the same as presented in the first appeal, held that the record clearly established self-defense so that the motion for directed verdict of acquittal should have been granted, reversed the judgment of conviction and ordered the defendant be discharged.
In McKnight v. State, 341 So.2d 261 (Fla.3d DCA 1977) the victim, a strong man *599 with a reputation for violence, who had lived with defendant, severely beat defendant in a bar earlier in the evening. When defendant returned home, she found the victim there, who again threatened to beat her. She told the victim to stay away, but he came at her muttering profanities. She retreated, again told him to stay away, but when he kept coming at her she removed a pistol from her pocketbook and fired at the victim, killing him. The court held that the uncontroverted evidence clearly demonstrated that defendant acted in self-defense, and reversed her conviction.
In Bacom v. State, 317 So.2d 148 (Fla.1st DCA 1975) the court reviewed the evidence resulting in a manslaughter conviction, and concluded that the defendant had not provoked the altercation and had lawfully protected himself when he stabbed the victim who came at him wanting to fight. The judgment of conviction was reversed with directions to discharge the defendant.
In Harris v. State, 104 So.2d 739 (Fla.2d DCA 1958) the court reviewed the testimony of appellant and his daughter, the only eyewitnesses to the killing, found it to be uncontradicted and unimpeached, held that the legal effect of the uncontradicted evidence was a question of law for the court, and reversed the manslaughter conviction with directions that appellant be discharged, finding as a matter of law that the homicide was justifiable as having been committed in self-defense.
The legal sufficiency of the evidence to support a conviction is a matter of law for the court; the weight of legally sufficient evidence is for the jury. Tibbs v. State, 397 So.2d 1120 (Fla. 1981) affirmed, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); Harris, supra. In a criminal proceeding, a finding that the evidence is legally insufficient is equivalent to a determination that the prosecution has failed to prove the defendant's guilt beyond a reasonable doubt. Tibbs at 1123. See also Burks v. United States, 437 U.S. 1, 16 n. 10, 98 S.Ct. 2141, 2150 n. 10, 57 L.Ed.2d 1 (1978).
The justifiable homicide statute, section 782.02, Florida Statutes (1981), is declaratory of the common law. In Linsley v. State, 88 Fla. 135, 101 So. 273 (1924), the court said:
The law of justifiable homicide by self-defense has many times been set forth in decisions of this court. There must be reasonable grounds to apprehend a design to commit a felony, or to do some great personal injury, and there shall be imminent danger of such design being accomplished. "Imminent means near at hand, mediate rather than immediate, close rather than touching." The one interposing the defense must not have wrongfully occasioned the necessity; he must have used all reasonable means in his power, consistent with his own safety, to avoid the danger and to avert the necessity of taking human life; the circumstances must be such as to induce a reasonably cautious and prudent man to believe that the danger was actual and the necessity real, in order that the slayer may be justified in acting upon his own belief to that effect.
Id. at 274-275.
Here, not only was the State's evidence legally insufficient to prove defendant's guilt beyond a reasonable doubt, but conversely, it affirmatively proved, without contradiction or impeachment, all the elements of self-defense. Defendant was set upon by Williams, a violent and dangerous person, known to carry a knife, who was drunk and enraged and who was out to seriously injure or maim defendant, or worse yet if his threats were to be believed, to kill the defendant. All the evidence clearly pointed to defendant having reasonable grounds to believe that he was in great physical danger and that Williams had the intent and the ability to inflict on defendant serious personal injury. Defendant did what he could to extricate himself from the situation and armed himself for protection. He attempted to retreat from the battle, but Williams pursued him. As defendant retreated he continued to ask Williams to stay away, to break it off, to leave him alone, but Williams continued to *600 stalk him, fists balled and ready to inflict damage. Defendant fired a shot into the ground, still retreating and still asking Williams to stay away, but Williams came on relentlessly. The evidence is clear that defendant fired the second and fatal shot because there was no alternative, because Williams had closed in on him and had defendant turned to run, Williams would have been on him. On these facts, self-defense has been clearly demonstrated by the State's evidence, and defendant's motion for directed verdict of acquittal should have been granted.
The judgment of conviction is REVERSED with directions to discharge the defendant.
FRANK D. UPCHURCH, Jr. and SHARP, JJ., concur.
NOTES
[1] A deputy sheriff who testified for the State said that Williams had a reputation in the community as a violent and dangerous person.
[2] While we have outlined here only the State's evidence on the altercation, it should be pointed out that the witnesses who later testified for the defendant testified to essentially the same facts.