464 So.2d 149 (1985)
Cora CANNON, Appellant,
v.
STATE of Florida, Appellee.
No. 83-531.
District Court of Appeal of Florida, Fifth District.
January 3, 1985.
Rehearing Denied January 30, 1985.
*150 James B. Gibson, Public Defender, and Larry B. Henderson, Asst. Public Defender, Daytona Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Kenneth McLaughlin, Asst. Atty. Gen., Daytona Beach, for appellee.
SHARP, Judge.
Cora Cannon appeals from a judgment adjudicating her guilty of manslaughter[1] for the fatal stabbing of her husband, Larry. She argues the trial court erred in not giving the defense's requested jury instruction that she had no duty to retreat because her husband attacked her in her home without provocation. Instead the court instructed the jury:
The defendant cannot justify her use of force likely to cause death or great bodily harm unless she used every reasonable means within her power and consistent with her own safety to avoid the danger before resorting to that force.
The fact that the Defendant was wrongfully attacked cannot justify her use of force likely to cause death or great bodily harm if, by retreating, she could have avoided the need to use that force.
We reverse.
Back in the days of Coke, Hale and Hawk, any man who was feloniously attacked without provocation could stand his ground anywhere, not retreat, and use deadly force if necessary to repel the attacker.[2] However, as the centuries passed, the common law placed greater emphasis on the sanctity of life as opposed to chivalry. A duty to retreat evolved and the courts said that a person under attack had to "retreat to the wall or ditch"[3] before taking a life.
One of the exceptions to the duty to retreat was when a person was attacked in his home.[4] Mr. Justice Cardozo said "It is not now and never has been the law that a man assailed in his own dwelling is bound to retreat." W. Burdick, supra note 1, at 133. The rationale was that a person in his own home had already retreated "to the wall" as there was no place to which he could further flee in safety. "Whither shall he flee, and how far and when may he be permitted to return?" Jones v. State, 76 Ala. 8 (1884), quoted in 2 C. Torcia, Wharton's Criminal Law, 135 (14th ed. 1979). Most jurisdictions adhere to the concept that there is no duty to retreat in one's home, even if the attacker is a spouse, invitee, or member of the family.[5]
*151 However, Florida has adopted a variant of this rule that imposes on a person being feloniously attacked in his home a duty to retreat before the onslaught, if the attacker has a right at least equal to that of the person under attack to be on the premises. See State v. Bobbitt, 415 So.2d 724 (Fla. 1982) (spouses both residing in their marital home); Conner v. State, 361 So.2d 774 (Fla. 4th DCA 1978) (mother and son who shared living quarters). In the case of an attack by a house guest or friend, however, there is no duty to retreat in the home. Hedges v. State, 172 So.2d 824 (Fla. 1965); Johnson v. State, 432 So.2d 583 (Fla. 4th DCA 1983).
In this case there was substantial evidence that the decedent and Cannon were not sharing the residence on an equal basis when the attack occurred. They were separated. When she was attacked, Cannon was sharing the home with her daughter, Sherrie, who was the actual tenant on the oral lease for their house. Because Larry had no money, no job, and nowhere to sleep, they allowed him to stay at their residence for a few days  provided he "behaved himself." His clothes and belongings were in his pickup truck.
Larry apparently was a chronic alcoholic, and when drunk, would sometimes become violent. Cannon testified she had frequently been beaten and abused by him. On the night of the fatal stabbing, Larry became highly intoxicated, went into Cannon's bedroom and began beating her up. His blood alcohol level tested.277 at the time he died.
Although there were at least three versions of the ensuing events, looking at the one most favorable to support Cannon's requested instruction,[6] it appears that Cannon left her bedroom in her nightgown and bare feet after suffering Larry's initial unprovoked attack. Sherrie intervened and calmed Larry down. When they told Larry to leave the house, he refused. Sherrie then persuaded Cannon that they should leave. While Sherrie was sitting in the living room watching television, Cannon made her preparations to leave. She first armed herself with a knife from the kitchen. Then she returned to her bedroom to retrieve her purse, car keys, and clothes. Without any provocation by Cannon, Larry renewed the attack. She fought back, fatally stabbing Larry by severing the illiac artery in his groin.
It appears from this record that Larry Cannon's status in the household was more similar to an invitee or guest, as in Hedges and Johnson than the persons in Bobbitt and Conner. Therefore, appellant was entitled to have the "no duty to retreat instruction" given to the jury if there was any evidence the jury could have relied upon to find that Cannon did not initiate the second fatal battle or become a mutual combatant. An aggressor or a mutual combatant must "retreat to the wall" before they can use deadly force.[7] "[F]or both being in the wrong neither can right himself without retreating." Bobbitt at 726.
The record is in conflict on this point. Cora Cannon testified her sole purpose in returning to her bedroom was to get her clothes and car keys. She hoped she could avoid any further conflict with Larry. Sherrie's testimony supported her mother's statement. Although there were prior statements made by Cannon offered at trial which somewhat contradicted this view, Cannon attempted to explain these discrepancies. The resolution of these matters was properly for the jury. However, if they chose to believe she was not the aggressor, she was entitled to the requested instruction. Smith v. State, 424 So.2d 726 (Fla. 1983), cert. denied, 462 U.S. 1145, 103 S.Ct. 3129, 77 L.Ed.2d 1379 (1983); Mellins v. State, 395 So.2d 1207 (Fla. 4th DCA 1981); Williams v. State, 356 So.2d 46 (Fla. 2nd DCA 1979). Accordingly, the judgment *152 is reversed and this cause is remanded for a new trial.
REVERSED AND REMANDED.
DAUKSCH and ORFINGER, JJ., concur.
NOTES
[1] § 782.07, Fla. Stat. (1981).
[2] See 2 William L. Burdick, Law of Crimes, § 436g (1946); 4 W. Blackstone, Commentaries [*]185.
[3] W. Burdick, supra, note 2, at § 436g.
[4] Pell v. State, 97 Fla. 650, 122 So. 110 (1929); Annot., 26 A.L.R. 3rd 1296 (1969); W. La Fave & A. Scott, Criminal Law, 395-396 (1972).
[5] W. La Fave & A. Scott, supra note 4, at 395-396; 2 C. Torcia, Wharton's Criminal Law, § 126 (14th ed. 1979).
[6] Smith v. State, 424 So.2d 726 (Fla. 1983); Bolin v. State, 297 So.2d 317 (Fla. 3rd DCA 1974).
[7] W. Burdick, supra, note 2, at § 436g; C. Torcia, supra. note 5, at § 126; 4 W. Blackstone, supra, note 2, at [*]185; Bobbitt; Pell v. State, 97 Fla. 650, 122 So. 110 (1929); Danford v. State, 53 Fla. 4, 43 So. 593 (1907).