727 So.2d 997 (1999)
Ivan L. ADAMS, Appellant,
v.
STATE of Florida, Appellee.
No. 98-00050.
District Court of Appeal of Florida, Second District.
February 3, 1999.
*998 Guillermo E. Gomez of Richard Escobar, P.A., Tampa, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Michele Taylor, Assistant Attorney General, Tampa, for Appellee.
PATTERSON, Acting Chief Judge.
Ivan L. Adams appeals from the order denying his motion for postconviction relief after evidentiary hearing and alleges ineffective assistance of trial counsel. We reverse and remand for a new trial.
Adams was indicted and tried for first-degree murder. A jury found him guilty of the lesser-included offense of manslaughter and the trial court sentenced him to fifteen years' imprisonment. He appealed to this court, which issued its per curiam affirmance. Adams then filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850.
Adams was a fifty-six-year-old disabled man at the time he shot his thirty-three-year-old neighbor, Alan Feltz. Feltz was in good health and was characterized as having a quick temper. Adams and Feltz had been at odds for months prior to the shooting. Feltz's wife had an affair with Adams, claimed rape, and then admitted to voluntary sexual conduct. Feltz embarked on a course of harassment of Adams and his family, which included firing shots at Adams as he stood by his mailbox. That incident resulted in Feltz being charged with aggravated assault. Adams' neighbor saw Feltz shoot at Adams' dogs, and Adams' son and a friend asserted that Feltz had run them off the road with his truck as they were driving their four wheelers.
On the day of the shooting, October 14, 1993, Adams and Feltz confronted each other when Adams went to the end of his road to get his newspaper. According to Adams, Feltz cursed him and his dogs and lunged at him saying, "I'm going to kick your mother f________ ass." Believing that Feltz intended to kill him, Adams shot Feltz three times and then went back to his home and called the police.
Adams retained private counsel, Andrea Black, to represent him at trial. Adams contends that Black was ineffective for:
(1) failing to call a Ms. Kimbrell as a witness;
(2) failing to request a jury instruction pursuant to Florida Rule of Criminal Procedure 3.215(c)(2); and
(3) submitting to the court an erroneous jury instruction on self-defense which was read to the jury.
To prevail on a claim of ineffective assistance of counsel, a defendant must show that: (1) the acts or omissions of counsel fell outside the range of professionally-competent assistance; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). After an evidentiary hearing, the trial court ruled that counsel's action as to each issue was a tactical or strategic decision and that counsel was not ineffective.

FAILURE TO CALL MS. KIMBRELL AS A WITNESS
In pretrial discovery, Ms. Black took the deposition of Martha Kimbrell, a person who had worked with Feltz. At the rule 3.850 evidentiary hearing, Black testified that Kimbrell engaged in conversations with Feltz which indicated his intent to do harm to Adams in the future. Black did not call Kimbrell as a witness. Black did put on evidence through the testimony of neighbors that Feltz had shot at Adams in the past, reflecting Feltz's animosity toward Adams. Black testified that, even if Kimbrell's hearsay testimony were admissible under section 90.803(3)(a)(2), Florida Statutes (1993) (to prove or explain acts of subsequent conduct of the declarant), she would not have called Kimbrell and opened the door for cross-examination as to statements Adams made. We agree with the trial court that Black's *999 explanation reflects a reasonable strategic or tactical decision at trial and does not constitute ineffectiveness.

JURY INSTRUCTION ON PSYCHOTROPIC MEDICATION
During the trial, Adams was taking an anti-depressant medication called Zoloft together with other prescription drugs. Black did not request a jury instruction pursuant to rule 3.215(c)(2), informing the jury both at the beginning and at the end of the trial that Adams would be under the influence of psychotropic medication during the trial and the possible side effects it may have on his testimony. Adams' wife and son had told Black that the Zoloft had changed his mood by making Adams aggressive, belligerent, and angry. Adams testified at trial and was aggressive and belligerent with the prosecutor to the point that Black categorized his testimony as a disaster. In the face of this result, Black did not request the instruction. She admitted that she was unaware of rule 3.215(c)(2), but if she had been aware of it, she would not have requested the instruction. Her reasoning was that the jury could infer that Adams' conduct on the day of the shooting was also belligerent and aggressive due to the medication. The trial court's conclusion that the failure to request this instruction was a tactical decision is not supported by the record. Black could not make a tactical decision as to an option she did not know existed. We conclude that ignorance of the law on an issue that was pertinent to the overall presentation of Adams' defense meets the first prong of Strickland. We do not conclude, however, that this deficiency in and of itself rises to the level of establishing the prejudice prong of Strickland.

JURY INSTRUCTION ON SELF-DEFENSE
Having admitted shooting Feltz, Adams' only defense that was consistent with his statement given to law enforcement was self-defense. No evidence indicated that Feltz had attacked Adams with a weapon. To support his use of deadly force, Adams contended that Feltz was in the process of committing a forcible felony directed at him. Section 776.012, Florida Statutes (1993), defines self-defense as follows:
776.012 Use of force in defense of person.A person is justified in the use of force, except deadly force, against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of deadly force only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another or to prevent the imminent commission of a forcible felony.
Black relied upon aggravated stalking as the forcible felony to justify Adams' use of deadly force in self-defense.[1]
Feltz's conduct prior to the shooting and at the time of the event could be found to be aggravated stalking as defined in section 784.048(3), Florida Statutes (1993). Therefore, Adams' defense was viable under the facts of the case. It is the burden of the defendant to go forward with some evidence of self-defense. See Bolin v. State, 297 So.2d *1000 317 (Fla. 3d DCA 1974). The burden of proving guilt beyond a reasonable doubt, however, never shifts from the State, including that the State prove beyond a reasonable doubt that the defendant did not act in self-defense. See Brown v. State, 454 So.2d 596 (Fla. 5th DCA 1984). It is never the defendant's burden to prove anything beyond and to the exclusion of a reasonable doubt. Within this context, Black submitted to the court and the judge read to the jury a defense jury instruction which read in pertinent part:
I will now define for you the elements of aggravated stalking. The following elements must be proved beyond a reasonable doubt: (1) that Alan Feltz willfully, maliciously and repeatedly (2) followed or harassed Ivan Lewis Adams and (3) Alan Feltz made a credible threat with the intent to place Ivan Lewis Adams in reasonable fear of death or bodily injury.
(Emphasis supplied.) This is essentially the standard jury instruction given when a defendant is charged with aggravated stalking. It accurately sets out the State's burden of proof, but is totally inappropriate as to the degree of proof a defendant must offer in support of his defense. We cannot characterize as trial strategy counsel's proposing and agreeing to an erroneous jury instruction which dramatically shifts the burden of proof to the defendant. This was a close case, as emphasized by the jury's verdict of manslaughter in a first-degree murder prosecution. It is likely that, if properly instructed, the jury would have returned a "not guilty" verdict based on self-defense. In regard to this issue, both prongs of the Strickland test have been met. Thus, we must reverse the trial court's order and remand for a new trial.
Reversed and remanded.
ALTENBERND and NORTHCUTT, JJ., Concur.
NOTES
[1] Section 776.08, Florida Statutes (1993), defines forcible felony as follows:

"Forcible felony" means treason; murder; manslaughter; sexual battery; carjacking; home-invasion robbery; robbery; burglary; arson; kidnapping; aggravated assault; aggravated battery; aircraft piracy; unlawful throwing, placing, or discharging of a destructive device or bomb; and any other felony which involves the use of threat of physical force or violence against any individual.
Section 748.048, Florida Statutes (1993), defines aggravated stalking as follows:
(3) Any person who willfully, maliciously, and repeatedly follows or harasses another person, and makes a credible threat with the intent to place that person in reasonable fear of death or bodily injury, commits the offense of aggravated stalking, a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
The 1995 Legislature added aggravated stalking to the list of enumerated forcible felonies recited in section 776.08. We presume that Adams' contention that aggravated stalking was a forcible felony in 1993 (the year of the offense) for the purpose of section 776.012 is under the catch-all "other felony" language of section 776.08 as it existed in 1993.