933 So.2d 676 (2006)
E.A.B., Appellant,
v.
STATE of Florida, Appellee.
No. 2D04-3391.
District Court of Appeal of Florida, Second District.
July 14, 2006.
*677 James Marion Moorman, Public Defender, and Carol J.Y. Wilson, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Marilyn Muir Beccue, Assistant Attorney General, Tampa, for Appellee.
DANAHY, PAUL W., Senior Judge.
We review the order of the trial court which found E.A.B. guilty of, and withheld adjudication for, the delinquent acts of improper exhibition of a dangerous weapon and culpable negligence with actual injury. We reverse the order because the State failed to rebut E.A.B.'s prima facie case of self-defense and, accordingly, failed to carry its burden to prove the delinquent offenses beyond a reasonable doubt.
The record of the adjudicatory hearing shows that, on November 15, 2003, the following chronology of events occurred.
Several teens, including E.A.B. and her brother, the alleged victim, had gathered and were talking outside the apartment residence of the latter two. E.A.B. was fifteen; her brother, the victim, was sixteen and described as taller, heavier, and stronger than E.A.B. An argument began between the two and he pushed her. She turned and went into their residence to avoid him. He followed her inside where those outside could hear sounds of a commotion with yelling and crashing inside. A physical altercation between them occurred first in the living room, then in a hallway where he got her in a headlock. She broke free, leaving blood spots in both areas, and fled into the small kitchen where she could go no further. There, with her right hand, she grabbed a plastic handled steak knife with a five-inch blade for use, she said, only to protect herself should he follow to further injure her.
She said that she "feared for her life" or that he would inflict further injury on her such as, "bruises or broken bones." She stood there in the kitchen with her right elbow at her side and her forearm extended holding the knife with the blade pointed upward. Her efforts to avoid him by retreating to the kitchen, however, were to no avail. He said that he could see from outside the kitchen that she was standing there holding the knife. Despite that, he followed her into the kitchen and, as he moved toward her, she stood her ground without moving. As he moved forward he grabbed her right wrist with his left hand. His hand slipped from her wrist which caused her arm to move forward resulting in the knife cutting him once in his upper left chest. He backed into the living room. She immediately dropped the knife and, as she went to aid him, he punched her in her left eye injuring her.
Other than her brother, the alleged victim, the State's principal witness was the police officer who arrived at the home to investigate the incident. He found E.A.B. sitting on the front steps shortly after the trauma and violence had occurred. He said that she appeared "deadpan" and that when he asked her what happened, her version of the events was essentially as we have outlined them. He did not ask her whether she had been in fear of her life, whether the stabbing had been an accident, whether she had acted in self-defense or whether she was sorry her brother had *678 been injured. Despite the lack of such questions by the officer, the officer testified, when asked by the prosecutor whether she had made such statements, that she did not offer any statements about those matters. The officer further said that he inspected the interior of the home and found it "pretty well disturbed" with blood in the living room, hallway and kitchen.
The second officer to arrive at the home had been to the hospital where he observed, but did not speak with, E.A.B.'s brother, the victim, who was treated and released. At the home this officer observed E.A.B. with an injury to her face. Photographs taken at some later date showing her swollen left eye were admitted in evidence.
At the close of the adjudicatory hearing E.A.B. moved the court for a judgment of dismissal pursuant to Florida Rule of Juvenile Procedure 8.110(k). She argued that while she had presented a prima facie case of self-defense, the State had failed to rebut this hypothesis of innocence. In response the State argued, as it does here, that she failed to establish her defense, but that even if she did so, the testimony of the investigating officer was sufficient to rebut her theory of defense.
E.A.B.'s motion tests the legal sufficiency of the State's case, including the evidence presented to establish her theory of defense, and the State's evidence presented to rebut that defense. Thus, as we do with a motion for judgment of acquittal in a criminal trial, we review the issue raised by its functional equivalent, a motion for dismissal in a juvenile proceeding, de novo. Pagan v. State, 830 So.2d 792, 803 (Fla.2002); I.M. v. State, 917 So.2d 927, 929 (Fla. 1st DCA 2005).
We agree that E.A.B. presented a prima facie case of self-defense. Given the events that had just occurred, she was objectively afraid of further injury from her brother. Under our law, even if it were possible to flee from the home she occupied with her brother, she was under no duty to do so. Rather, under the "castle doctrine," she had a limited duty to retreat within their home to the extent she reasonably could without increasing her own danger of great bodily harm. Once she had gone into the kitchen, where she could go no further, she was entitled to stand and use the force she did to prevent further injury to herself, even if it were likely to, as it did, cause injury to her brother. See Weiand v. State, 732 So.2d 1044 (Fla.1999).
The State argues that the testimony of the investigating police officer was sufficient to rebut E.A.B.'s theory of self-defense, and that further, it carried its burden to prove the offenses charged. A study of the officer's testimony, however, reveals that he presented no competent evidence inconsistent with the testimony she presented to establish her prima facie case of self-defense. Rather, his testimony amounted to little more than responses to questions posed by the prosecutor to elicit answers E.A.B. never gave to questions the officer never asked her. We conclude that this testimony was inadequate, and legally insufficient to rebut E.A.B.'s case of self-defense. Accordingly, the State failed to meet its burden to disprove her defense beyond a reasonable doubt. See Sneed v. State, 580 So.2d 169, 170 (Fla. 4th DCA 1991); see also W.E.P. v. State, 790 So.2d 1166 (Fla. 4th DCA 2001). In Fowler v. State, 921 So.2d 708, 711 (Fla. 2d DCA 2006), this court cited with approval the following quote from Brown v. State, 454 So.2d 596, 598 (Fla. 5th DCA 1984):
While the defendant may have the burden of going forward with evidence of self-defense, the burden of proving *679 guilt beyond a reasonable doubt never shifts from the State, and this standard broadly includes the requirement that the State prove that the defendant did not act in self-defense beyond a reasonable doubt.
. . . .
[W]hen the State's evidence is legally insufficient to rebut the defendant's testimony establishing self-defense, the court must grant a motion for judgment of acquittal.
The State failed in its burden to rebut E.A.B.'s prima facie case of self-defense. Because this is so, the State failed to prove beyond a reasonable doubt that E.A.B. committed the charged offenses. In sum, the trial court erred when it denied E.A.B.'s motion for judgment of dismissal. We reverse the order and remand with instructions to dismiss the State's petition for delinquency.
NORTHCUTT and SALCINES, JJ., Concur.