719 So.2d 335 (1998)
STATE of Florida, Appellant,
v.
Ivan RIVERA, Appellee.
No. 97-490.
District Court of Appeal of Florida, Fifth District.
September 11, 1998.
Rehearing Denied October 22, 1998.
Robert A. Butterworth, Attorney General, Tallahassee, and Carmen F. Corrente, Assistant *336 Attorney General, Daytona Beach, for Appellant.
Jeffrey D. Deen and James P. Woods of Fisher, Laurence, Deen & Fromang, Altamonte Springs, for Appellee.
PER CURIAM.
Ivan Rivera (defendant) was charged by information with the crimes of attempted manslaughter with a firearm[1] and aggravated battery with a firearm[2]. The state appeals the trial court's judgments of acquittal entered after the conclusion of a jury trial. We affirm because the state failed to sustain its burden of rebutting Rivera's prima facie case of self-defense.
On June 10, 1994, Rivera, a twenty-six-year-old resident of Brevard County, operated a booth at a gun show at the Orlando fairgrounds. He left the show in his Volkswagen van carrying his inventory of guns and three thousand dollars in cash. After stopping at Lake Buena Vista for dinner and entertainment, Rivera began driving east on Interstate 4 looking for Colonial Drive where he planned to find a hotel in which to spend the night before returning to the gun show the next morning. It was approximately 2:00 a.m.
At the same time, Mike McCrae, Steve Bond, Rick Papas, Ben Hamilton, and Noel Lewis were returning home from a night of drinking in downtown Orlando. All five men were crowded into Bond's pickup truck. Bond was driving, McCrae was in the passenger seat, and Papas was in the middle. Hamilton and Lewis were seated in the bed of the truck. At six-feet tall and 190 pounds McCrae had an imposing physique. McCrae was on probation for aggravated battery because during a bar fight he had repeatedly kicked another man in the head causing serious injury, and on this night, he had a blood alcohol level of .116.
As Bond's pickup merged onto I-4, Rivera's van approached from behind, and Rivera flashed his headlights and then passed the pickup. After Rivera passed Bond's pickup, Bond began to pursue Rivera and the chase that ensued lasted for ten miles. During the chase, Papas reminded Bond and McCrae that there was just one person in the van and suggested that they "let it go." Bond testified that, notwithstanding Papas' warning, he wanted to catch up with the van so he could "mess with the guy." As they sped down the highway, Bond threw objects which struck Rivera's van, including a can of tuna and a 2-liter bottle of Pepsi Cola which exploded on Rivera's windshield.
As the men in the truck continued their pursuit, Rivera made every effort to find safety. He attempted to escape from the men in the pickup truck by driving at speeds up to eighty-five miles an hour. However, he was unable to elude them. At one point, Rivera pulled on to the emergency lane of I-4 and turned his lights off, hoping the men in the truck would not notice him and drive by. Unfortunately, the men spotted the van, cut across two lanes of traffic, and pulled in behind it. When the passenger door of the pickup opened and McCrae started to get out, Rivera pulled back onto I-4, and the chase resumed.
As he was being pursued, Rivera blew his horn and flashed his lights to get the attention of a police officer but these efforts to terminate the chase were also futile. Rivera was alone and terrified. He believed his pursuers were carjackers who had followed him from the gun show knowing he was carrying a large sum of money and guns.
Rivera's last evasive measure proved to be tragic. As he approached the SR 436 exit in Altamonte Springs, Rivera decided to leave I-4. Bond testified that he followed the van as it exited I-4 because he was angry and wanted to confront Rivera. As Rivera reached the SR 436 intersection, he was forced to stop his van at a red light. Traffic was passing in front of him on SR 436 which prevented him from running the light. While he was stopped, his engine stalled. Rivera testified that he saw Bond, McCrae, and a third man exit the bed of the truck and approach Rivera's van. Papas admitted that *337 McCrae's sole purpose for getting out of the truck was to beat up Rivera.
As McCrae raced toward the van, Rivera retrieved a zippered case containing a shotgun loaded with birdshot from behind his seat. As McCrae and the others continued their approach, Rivera removed the shotgun from the case. McCrae approached Rivera's passenger door and attempted to enter the van, using the door handle, then striking the side window with his fists. McCrae moved to the front of the van and Rivera restarted and revved his van's engine several times in an attempt to scare McCrae away. McCrae did not move.
The trial court summarized Rivera's testimony as to what transpired thereafter in its order granting his motions for judgment of acquittal:
McCrae did not step aside but rather threw some liquid on the van and raised a pistol. Rivera testified that at that moment he knew he was going to die. As Rivera saw and heard the pistol touch the windshield he ducked and fired a single shot through his dash. McCrae fell. Rivera backed up, sped around the fallen body and ran through the intersection. Rivera proceeded to a pay phone, called 911.
Rivera awaited the police and surrendered.
At the close of all evidence, the trial court orally denied Rivera's motion for judgments of acquittal and sent the case to the jury. However, after the jury found Rivera guilty as charged, the trial court reversed its earlier ruling and granted the judgments of acquittal on both charges. In doing so, the trial court ruled, "[t]he state's evidence was legally insufficient to prove guilt beyond a reasonable doubt, because the state failed to rebut the defendant's direct testimony that he acted in self-defense...." The state appeals, arguing the trial court abused its discretion in so ruling. The state maintains the trial evidence was in dispute as to (1) whether McCrae had a gun as he stood in front of Rivera's van, and (2) whether Rivera could have retreated from the attack by running over McCrae with the van instead of shooting at him with a gun. The state further contends that by presenting conflicting evidence on this issue the state rebutted Rivera's prima facie case of self-defense. We disagree.
A motion for judgment of acquittal pertains to the legal sufficiency of the state's evidence. See State v. Smyly, 646 So.2d 238, 241 (Fla. 4th DCA 1994). If the trial evidence taken in a light most favorable to the state does not support a conviction, the motion must be granted. See id. On the other hand, if the state establishes the existence of each element of the crime charged, a motion for judgment of acquittal must be denied. See Taylor v. State, 583 So.2d 323, 328 (Fla. 1991). The analysis required in considering a motion for judgment of acquittal is the same whether the motion is granted at the conclusion of the state's case, at the close of all the evidence, or after the jury returns a verdict of guilty. See Fla. R.Crim. P. 3.380. The question here is whether the trial court was correct in concluding that the state failed to sustain its burden of proof.
The state concedes that, in order to establish its case against Rivera, it had the burden of rebutting Rivera's claim that he shot the victim in self-defense. Section 776.012, Florida Statutes (1993), defines selfdefense as follows: "[A person] is justified in the use of deadly force only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another or to prevent the imminent commission of a forcible felony." See also Hunter v. State, 687 So.2d 277, 278 (Fla. 5th DCA 1997). If a defendant establishes a prima facie case of self-defense, the state must overcome the defense by rebuttal, or by inference in its case in chief. See Sneed v. State, 580 So.2d 169, 170 (Fla. 4th DCA 1991). If the state fails to sustain this burden of proof, the trial court is duty bound to grant a judgment of acquittal in favor of the defendant. See Brown v. State, 454 So.2d 596, 599 (Fla. 5th DCA), rev. denied, 461 So.2d 116 (Fla. 1984).
The unrebutted evidence presented by the defendant demonstrated that, due to the threatening conduct of the men in the pickup, Rivera reasonably feared for his life and believed that deadly force was necessary to prevent imminent bodily injury. See Diaz *338 v. State, 387 So.2d 978, 980 (Fla. 3d DCA 1980), rev. denied, 397 So.2d 779 (Fla.1981). The defendant's testimony regarding the number of men who exited the pickup at the SR 436 intersection and whether McCrae had possession of a firearm when he approached the front of Rivera's van was controverted. The state's witnesses testified that only McCrae exited the truck and disputed Rivera's testimony that McCrae was armed. However, even if McCrae was the only one to exit the truck and he was unarmed, Rivera established a prima facie case of self-defense as defined by section 776.012, Florida Statutes (1993). The unrebutted testimony established that by the time Rivera was trapped at the intersection, he reasonably believed that death or great bodily harm was imminent and that McCrae was committing a forcible felony. This belief was reasonable because McCrae and his friends had already threatened Rivera's life and the lives of other innocent people by engaging in a high-speed chase and throwing deadly missiles for the sole purpose of "messing with" Rivera.[3] Rivera knew McCrae and his friends would pursue him until they caught him because they engaged in such unrelenting violent conduct. This was plainly evident by McCrae's refusal to move away from the front of the van when Rivera revved his engine.
We reject the state's contention that Rivera's conduct does not qualify as selfdefense because, at the time the shot was fired, Rivera had not yet "retreated to the wall." In this regard, the state argues Rivera could have retreated further by running McCrae over with his van. This argument defies common sense. We fail to understand how hitting McCrae with a van would qualify as a legal retreat. Even if Rivera had run over McCrae, the posture of this case would most likely be the sameMcCrae would have been injured, Rivera would have been prosecuted, and the same issue of self-defense would have been raised. It is abundantly clear that, by the time the shots were fired, Rivera had already taken every reasonable effort imaginable to disengage the relentless aggressors and extricate himself from the peril they created. As a result, the trial court properly concluded that Rivera had "`retreat[ed] to the wall using all means in his power to avoid th[e] need'" to use deadly force. See Hunter, 687 So.2d at 278 (quoting Reimel v. State, 532 So.2d 16, 18 (Fla. 5th DCA 1988), rev. denied, 542 So.2d 989 (Fla.1989)). Thus, the trial court properly concluded that the state failed to rebut Rivera's prima facie case of self-defense and we affirm the entry of judgments of acquittal in this case.
AFFIRMED.
GOSHORN and ANTOON, JJ., concur.
GRIFFIN, C.J., dissents, with opinion.
GRIFFIN, Chief Judge, dissenting.
The jury was presented with two very different descriptions of the events surrounding the shooting of Mike MacRae. Reduced to its essence, appellant claims he shot MacRae because MacRae was pointing a gun at him from the front of his van and he feared for his life.
MacRae's testimony was very different. At trial, the victim testified that he and his roommate went to the Hooters near Church Street Station to watch the NBA finals. They met other acquaintances and eventually five people piled into Steve Bond's small pickup truck at about 2:00 a.m. Steve Bond was driving his truck, Rick Pappas was sitting in the center, and the victim was sitting in the passenger side of the truck cab. Ben Hammel and Noel Lewis were riding in the bed of the truck. Each occupant, except Noel Lewis, had consumed roughly six beers between 10:00 p.m. and 2:00 a.m. The driver, Steve Bond, admitted to having "seven or eight" beers.
Bond used the South Street ramp to access I-4 eastbound. That approach merges with the fast lane on I-4. A Volkswagon Vanagon *339 minivan was traveling in the fast lane and its driver, Appellant Rivera, began flashing high beams in an attempt to get the pickup truck to move out of the fast lane. The Vanagon alternately tailgated and then slowed down. It finally passed the pickup truck by changing lanes; but quickly got back into the left hand lane, cutting off the pickup truck and causing the truck to swerve in order to avoid being hit by the van. According to MacRae, after the truck moved over into a right-hand lane, Appellant continued driving aggressively, trying to run the truck off the road another time. The van finally pulled ahead of the truck but they later saw it "dead stopped" in the center lane of I-4 near the Maitland exchange. As the truck pulled up behind the van, the van accelerated. At some point during the sequence of events, the driver of the pickup truck threw a can of tuna which hit the van and he also threw a two liter container of soda which shattered when it struck the windshield area of the van.
Both vehicles took the 436 exit. The van pulled into one of the left-hand turn lanes to proceed west, but was stopped for the red light. The pickup truck pulled up behind the van. Mike MacRae got out of the pickup truck alone and walked up to the passenger side of the van. His intention was to find out why the driver in the van was running the truck off the road and risking their lives. MacRae testified that he did not try to open the door but could not see through the tint on the window. He walked around to the front of the van but could not see inside the van due to the glare from the streetlights. The next thing he remembered was waking up two weeks later in the hospital and finding out that he was blind for life. MacRae testified that he has never owned a gun, that he did not have a gun that night, and that he had nothing in his possession when he walked up to the van.
As I understand the majority opinion, even if the victim's version of events were believed, the appellant would still be entitled to a judgment of acquittal. I simply am unable to understand how it can be said as a matter of law that at the time appellant shot the unarmed victim from inside his van, he shot in self defense. On the evidence presented, I believe this was a jury question. The jury heard all the evidence, had an opportunity to assess the credibility of all the witnesses and found the appellant guilty of attempted manslaughter and aggravated battery with a firearm. The trial court's first instinct was correctthis was a case for the jury to decide and the jury's verdict should be upheld.
NOTES
[1] §§ 777.04, 782.07; Fla. Stat. (1993).
[2] § 784.045, Fla. Stat. (1993).
[3] Section 790.19, Florida Statutes (1993) provides, in relevant part:

Whoever, wantonly or maliciously ... throws any missile or hurls or projects a stone or other hard substance which would produce death or great bodily harm, at, within, or in any ... vehicle of any kind which is being used or occupied by any person, ... shall be guilty of a felony of the second degree....