790 So.2d 1166 (2001)
W.E.P., Jr., a child, Appellant,
v.
STATE of Florida, Appellee.
No. 4D00-3007.
District Court of Appeal of Florida, Fourth District.
July 18, 2001.
*1167 Joseph Negron, Jr. of Crary, Buchanan, Bowdish, Bovie, Beres, Negron & Thomas, Chartered, Stuart, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Meredith L. Balo, Assistant Attorney General, Fort Lauderdale, for appellee.
WARNER, J.
A juvenile appeals his adjudication for felony battery, culpable negligence, and leaving the scene of an accident with personal injury on the grounds that the state did not prove the essential elements of the charges and failed to overcome appellant's self-defense claim. We agree and reverse.
This unfortunate incident began one evening as appellant, age 17, and his 14 year old brother were returning from dinner at their father's house. Appellant saw a Mustang he thought belonged to a friend. He flashed his lights at the Mustang, but *1168 when it pulled over, he realized it was not his friend and drove past. As he did so, his brother told him that someone in the Mustang threw a cup at him. Soon thereafter, the Mustang came up beside them on a bridge. One of the passengers was hanging out of the car making motions, and the car was swerving toward appellant's truck. Appellant did not stop. The driver of the Mustang testified that appellant slammed on his brakes in front of him, which appellant denied, but they both agreed that the Mustang pulled in front of appellant and slammed on its brakes. Appellant went around it and tried to get away. The Mustang followed him, and, when appellant stopped at a stop sign, two occupants of the Mustang got out of the car and approached his truck with something in their hands. In fear for himself and his brother, appellant sped off in an attempt to get away from the Mustang, but it still followed him. He wove through a residential section, speeding through several stop signs, in an attempt to lose the Mustang, but he was unsuccessful. Eventually, he entered what looked like a safe street, turned into a driveway to hide behind a hedge, and stopped.
It is at this point that the state's case at trial began. Sergeant Bart Knuff, the victim in this case, lived in the house where appellant pulled into the driveway. He was getting ready to go to work at about 8:30 p.m. when he heard a truck skid into his driveway and slam on the brakes. He came out of his house wearing only boxer shorts and shoes and without any identification. Before Knuff could reach appellant's truck, appellant saw the Mustang pulling in behind him, threw his truck into reverse, and backed quickly out of the driveway until the truck's rear wheels were in the swale on the other side of the street. Sergeant Knuff suspected that appellant was impaired and decided to stop him.[1]
Sergeant Knuff did not pay attention to the Mustang in the street and was not aware of anyone around him. However, two neighbors testified that the Mustang had stopped in the street and that its occupants were in the street yelling and breaking beer bottles. When Knuff reached the truck, he told appellant he was a police officer and ordered him to roll down the window. The driver of the Mustang testified that one of his passengers was close to Knuff and was also trying to get into the truck. Appellant testified that one of the people from the Mustang was right behind Knuff holding a beer bottle, cursing, and yelling things like, "[g]et out of the car," and "I'm going to cut you up. I'm going to F'ing kill you." The driver of the Mustang testified that he intended to have a violent confrontation with the occupants of the truck and that he was sure appellant and his brother felt threatened because he and his friends had been chasing them. He also testified that he thought Knuff was going to beat up appellant.
Because appellant did not obey Knuff's order to roll down his window, Knuff opened the door of the truck and told appellant to shut the truck off. Appellant was "very excited and not cooperative," and Knuff could hear him trying to get the truck in gear. Appellant told Knuff, "[t]hose guys are after me." Knuff testified that he said he was an officer, and he would take care of it. Appellant and his brother testified that Knuff responded to their plea that the people in the Mustang were after them by saying "I don't care. Get out of the car and lets settle this." Both appellant and his brother understood *1169 Knuff's words to be a threat, and appellant tried to get out of the situation.
Knuff testified that appellant cursed at him and told him to get out of his way. When Knuff reached for the ignition switch to turn the truck off, appellant grabbed his arm, pulled it away from the ignition, and got the truck in gear. Knuff was half in and half out of the truck when it started moving. He hit appellant in the mouth[2] at about the same time because he realized that he was "about to be drug." He remembered the truck starting forward, but very little else because he blacked out. Knuff was dragged by the truck for a short distance. That night, he told the investigating deputy that he had become tangled in the seat belt and that he fell from the vehicle when it stopped. He suffered abrasions, a concussion, and an injury to his eye.
At some point during these events, appellant's brother got out of the car and pleaded, "I'm only 14 ... Please don't hurt me." When appellant realized that his little brother was not in the truck, he turned around. His brother hopped in, and they sped away. According to the driver of the Mustang and neighbors, at least two beer bottles were thrown during these events. One of them hit appellant's little brother in the head, and one broke the window of the truck as it left the scene. Appellant testified that he was panicked and was still afraid for their safety. After he left the scene of the incident with Knuff, he continued to take evasive action until he got home. He tried to call his parents, but they did not answer. He then called his girlfriend who eventually put him in touch with the proper authorities. He told them that he had been assaulted by someone who had said he was a police officer and that this person had tried to hold onto the truck as he drove away. He was concerned that the person might have been hurt, but he still did not know who Knuff was.
The trial court found appellant guilty of leaving the scene of an accident, felony battery, and culpable negligence. The court adjudicated appellant delinquent and sentenced him to community control.
Appellant claims that the court should have granted his motion for judgment of dismissal[3] both because the essential elements of the crime were not proven and because the state did not present evidence inconsistent with his reasonable hypothesis of innocence. See C.N. v. State, 684 So.2d 298, 298-99 (Fla. 5th DCA 1996)(applying the rule of State v. Law, 559 So.2d 187 (Fla.1989), to delinquency cases). We agree that the state failed to prove the elements of felony battery in that it did not prove that appellant intentionally struck the victim. We further agree that the state also failed to offer evidence inconsistent with appellant's reasonable hypothesis of innocence, namely that he was acting in self-defense. In Dupree v. State, 705 So.2d 90 (Fla. 4th DCA 1998), we explained how the Law test is used to determine whether the state has met its burden of proof:
Generally, on a motion for judgment of acquittal, the court should not grant the motion unless, when viewed in a light most favorable to the state, the evidence does not establish the prima *1170 facie case of guilt. "In moving for a judgment of acquittal, a defendant admits all the facts and evidence adduced at trial, as well as every conclusion favorable to the State that a jury might fairly and reasonably infer therefrom." "The state is not required to `rebut conclusively every possible variation' of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant's theory of events ." "It is the trial judge's proper task to review the evidence to determine the presence or absence of competent proof from which the jury could infer guilt to the exclusion of all other inferences."
Id. at 93-94 (citations omitted).
Felony battery is defined by section 784.041, Florida Statutes (1999), as follows:
(1) A person commits felony battery if he or she:
(a) Actually and intentionally touches or strikes another person against the will of the other; and
(b) Causes great bodily harm, permanent disability, or permanent disfigurement.
The state claims that it offered proof of intentional conduct because appellant "hit" the victim with his truck by spinning the truck or taking off down the road with the victim still attached to the truck. We disagree.
This case is analogous to Munday v. State, 254 So.2d 33, 34 (Fla. 3d DCA 1971), where Munday ran an automobile "against" the complaining witness while he was attempting to keep Munday from moving the car which the witness had partially blocked in. Because the evidence as a whole was "as susceptible of the conclusion that [Munday] was trying to extricate the car, as it is of an intent to assault the witness," the third district reversed the conviction. Id. at 34. Similarly, in I.V. v. State, 608 So.2d 133 (Fla. 3d DCA 1992), "I.V. was adjudicated delinquent on a finding that he had committed an aggravated battery." Citing Munday, the court reversed "on the ground that the record does not establish that the shooting in question was intentional, rather than accidental." Id. at 133.
There is no evidence in the present case that appellant aimed his truck at Knuff. Nor was there evidence that he was aware that Knuff was attached to the truck before he stopped and saw Knuff get up off the ground. The evidence shows only that appellant intentionally tried to get away from Knuff and the Mustang crowd. As in Munday, the evidence is equally susceptible, perhaps more so, to the conclusion that there was only an attempt to escape and not an intent to batter Knuff. Having failed to offer evidence inconsistent with appellant's theory of events, the state did not prove that a felony battery occurred. Appellant's motion for judgment of dismissal should have been granted.
The state also did not offer evidence inconsistent with appellant's reasonable hypothesis of innocence of self-defense. In Diaz v. State, 387 So.2d 978 (Fla. 3d DCA 1980), the defendant testified directly that he feared for his life as a result of the victim's threats and his menacing approach. The court held that such testimony made out a prima facie case of self-defense. The state's circumstantial evidence to rebut the defendant's testimony was "woefully inadequate." Id. at 980. Similarly, in the instant case, the state's evidence is inadequate to rebut the direct testimony of both defense and state witnesses that all of appellant's actions were done in an attempt to escape a dangerous situation which was extremely threatening to him and his little brother.
*1171 State v. Rivera, 719 So.2d 335, 338 (Fla. 5th DCA 1998), is similar to this case in many ways. After Rivera flashed his lights at a truck, it chased him down a highway at night. When he stopped at a red light, men got out of the truck and surrounded his van. One stood in front of it and showed a gun. Rivera shot him, and the jury convicted him of attempted manslaughter and aggravated battery. The trial court entered judgments of acquittal, and the state appealed. The fifth district affirmed, explaining that the state had failed to sustain its burden of rebutting Rivera's prima facie case of self-defense. It explained as follows:
The unrebutted testimony established that by the time Rivera was trapped at the intersection, he reasonably believed that death or great bodily harm was imminent and that McCrae was committing a forcible felony. This belief was reasonable because McCrae and his friends had already threatened Rivera's life and the lives of other innocent people by engaging in a high-speed chase and throwing deadly missiles for the sole purpose of "messing with" Rivera. Rivera knew McCrae and his friends would pursue him until they caught him because they engaged in such unrelenting violent conduct. This was plainly evident by McCrae's refusal to move away from the front of the van when Rivera revved his engine.
Id. at 338 (footnote omitted). The issue in Rivera was whether the defendant was required to continue to retreat. The court held that he was not, but noted that if he had attempted to retreat and in doing so had run over the victim, the same issue of self-defense would have been raised.
In the instant case, although Knuff did not have a gun and was not one of the occupants of the Mustang, appellant did not know who Knuff was, and Knuff had acted in an aggressive manner. Appellant's belief that he and his brother were in danger was confirmed by the fact that the Mustang had already chased them and that the Mustang occupants were right with Knuff at the truck's side screaming their desire to hurt appellant and his brother. While the State claims that appellant's "popping of the clutch" with Knuff at the side of the truck shows a reckless disregard of Knuff, as in Rivera the state presented no evidence rebutting appellant's defense that his actions were justified as a result of the "unrelenting violent conduct" to which he and his brother had been subjected. Further, appellant did not choose to harm Knuff. Even though Knuff had forced his way into the truck, appellant attempted to retreat which is what the state argued in Rivera that the defendant should have done. In doing so, he unintentionally injured Knuff, but just as the court indicated in Rivera the same issue of self-defense is present.
This case is also similar to V.M. v. State, 766 So.2d 280 (Fla. 4th DCA 2000). V.M. had been found guilty of felony battery for hitting his teacher during a fight with another student under the theory that his intent to commit battery upon the student was transferred to the teacher. This court held that the state failed to present any evidence to rebut V.M.'s assertion of self-defense against the other student. See id. at 281. We determined where self-defense was a viable defense to the charge of battery on an intended victim, the defense also operates to excuse the battery on the unintended victim. Citing Thompson v. State, 552 So.2d 264, 266 (Fla. 2d DCA 1989), we concluded that where a defendant has established a prima facie case of self-defense, the state must prove beyond a reasonable doubt that the defendant did not act in self-defense. See V.M., 766 So.2d at 281 n. 1.
*1172 The state claims that it provided evidence inconsistent with appellant's self-defense claim by pointing to appellant's failure to give the authorities all of the facts regarding being chased by the Mustang when he called them on the night of the incident to report that he had been assaulted. However, those details were confirmed by the state's own witness, the driver of the Mustang, and they do not negate the self-defense claim. The state also contends that appellant should have driven to a police station or a shopping center to get away from the Mustang and thereby avoided the entire situation. While those actions would have been advisable had there been a shopping center or police station in the vicinity of the incident, the existence of other methods to avoid the confrontation with the Mustang group does not disprove the self-defense claim that arose when Knuff attempted to restrain appellant from leaving by grabbing at his keys and punching him in the mouth.
Because the state offered no evidence inconsistent with appellant's theory of self-defense, appellant's motion for judgment of dismissal should have been granted on all charges, including the charge of leaving the scene of an accident.[4] Because appellant was fleeing to avoid injury to himself and his brother, it would make no logical sense to require appellant to remain at the scene where his safety was in danger from aggressors because, in attempting to avoid confrontation, he accidentally injured one of the aggressors. See Rivera, 719 So.2d at 338. In any event, as soon as the danger dissipated, appellant contacted authorities to report the entire incident.
Finally, even though the court also agreed that appellant could not have been expected to know that Knuff, who appeared in his underwear with no identification, was a law enforcement officer, the court was particularly concerned that appellant failed to obey Knuff when Knuff told him he was a police officer. Should a citizen be required to respond with submission any time someone claims to be an officer? It is an all too sad fact that persons have been victimized as a result of their trusting criminals who were impersonating police officers to facilitate crimes. See, e.g., Miller v. State, 748 So.2d 327 (Fla. 3d DCA 1999)(impersonating police officer to obtain entry into home of elderly person). Further, a defendant cannot be guilty of resisting an officer, unless the accused has reason to know that his victim was an officer. See Thompson v. State, 695 So.2d 691, 692 (Fla.1997). Therefore, appellant's conduct cannot be judged more harshly because an individual identifies himself as an officer when appellant had no reason to know he was in fact an officer.
*1173 This case amounts to an unfortunate misunderstanding of the events as perceived by both appellant and the victim. As a result, despite Sergeant Knuff's good intentions and the severity of his injuries, appellant's actions were not criminally culpable. We therefore reverse with directions to dismiss the delinquency petition.
STONE and HAZOURI, JJ., concur.
NOTES
[1] There was no proof that appellant was impaired in any manner.
[2] Appellant testified that Knuff hit him several times in the mouth, and there were marks on his face when he was arrested later that night.
[3] This has been referred to by the parties as a judgment of acquittal. However, under the Rules of Juvenile Procedure, the proper title to the motion should have been a Motion for Judgment of Dismissal. See Fla. R. Juv. P. 8.105(k).
[4] Although appellant raised a self-defense claim to the charge of leaving the scene of an accident, this defense is more properly denominated a defense of necessity. The two defenses are similar, and appellant established the necessary elements of the necessity defense which are

(1) that the defendant reasonably believed that his action was necessary to avoid an imminent threat of death or serious bodily injury to himself or others, (2) that the defendant did not intentionally or recklessly place himself in a situation in which it would be probable that he would be forced to choose the criminal conduct, (3) that there existed no other adequate means to avoid the threatened harm except the criminal conduct, (4) that the harm sought to be avoided was more egregious than the criminal conduct perpetrated to avoid it, and (5) that the defendant ceased the criminal conduct as soon as the necessity or apparent necessity for it ended.
Bozeman v. State, 714 So.2d 570, 572 (Fla. 1st DCA 1998).