973 So.2d 1107 (2007)
Gary Lamar POLITE, Petitioner,
v.
STATE of Florida, Respondent.
No. SC06-1401.
Supreme Court of Florida.
September 27, 2007.
*1108 Carlos F. Gonzalez of Diaz, Reus, Rolff and Targ, LLP, Miami, FL, for Petitioner.
Bill McCollum, Attorney General, Tallahassee, Florida, Richard L. Polin, Bureau Chief, and Lucretia A. Pitts, Assistant Attorneys General, Miami, FL, for Respondent.
PARIENTE, J.
We have for review Polite v. State, 933 So.2d 587 (Fla. 3d DCA 2006), in which the Third District Court of Appeal certified conflict with the Fifth District Court of Appeal's decision in A.F. v. State, 905 So.2d 1010 (Fla. 5th DCA 2005).[1] The conflict issue is whether knowledge that a victim is a law enforcement officer is an essential element of the offense of resisting an officer with violence under section 843.01, Florida Statutes (2002). The Third District in Polite held that knowledge of an officer's status is not an essential element of the offense of resisting an officer with violence. The Fifth District in A.F. reached the opposite conclusion. Because we conclude that knowledge is an essential element of the crime of resisting an officer with violence, we quash the Third District's decision in Polite and approve the Fifth District's decision in A.F., to the extent it held that the State has the burden of proving the defendant's knowledge of the officer's status.

FACTS AND PROCEDURAL HISTORY
This case arises from the arrest and conviction of Gary Polite, a 38-year-old homeless man, for resisting an officer with violence under section 843.01. On December 16, 2002, Miami-Dade County Police Officer Marcos Munoz was working undercover in the downtown Miami area, wearing a T-shirt underneath a plaid, button-down shirt. Officer Munoz was patrolling for potential thieves near jewelry stores in downtown Miami when he observed Polite *1109 shaking and poking a parking meter in an apparent effort to extract some coins. Tampering with a parking meter is a misdemeanor so Munoz moved in for an arrest.
According to Munoz, he pulled out his badge, grabbed his handcuffs and went to seize Polite's wrist while simultaneously identifying himself as a police officer. Polite pulled away and Munoz took hold of his shoulders and clothing so he would not get away. Munoz told him not to resist.
The defendant's upper clothing slipped off and the defendant was able to get out of Officer Munoz's grasp. The defendant attempted to hit the officer and fled the scene. Officer Munoz sent out a BOLO [(be on the lookout)] for the defendant.
Officer Santiago was also working patrol that evening, not undercover, and received Officer Munoz's BOLO call. Shortly thereafter, Officer Santiago observed the defendant riding his bike. The defendant got off the bike and started walking toward the police officer. Officer Santiago identified himself as an officer and directed the defendant to stop. The defendant submitted to officer Santiago's authority without a struggle.
Polite, 933 So.2d at 588 n. 2.
The State charged Polite with second-degree misdemeanor tampering with coin-operated vending machines and parking meters under section 877.08(3), Florida Statutes (2002), and third-degree felonious resisting an officer with violence under section 843.01. Only two witnesses testified at trial. Officer Munoz testified for the State concerning his observations and actions in attempting to arrest Polite. Officer Santiago testified for the defense concerning his actions in detaining Polite. Officer, Santiago was in full uniform when he received the BOLO from Officer Munoz.[2] Officer Santiago testified that he was clearly identifiable as an officer and Polite submitted with "no struggle." Additionally, Officer Santiago testified that although Polite did not approach him asking for help or mention that someone was chasing him, Polite told Officer Santiago that "he wasn't sure that [Officer Munoz] was a policeman."
At the close of all the evidence, Polite moved for a judgment of acquittal on both counts.[3] As to the count of resisting an officer with violence, Polite argued that the State failed to meet its burden on an essential element of the crimethat Polite knew Munoz was an officer. The State argued that knowledge of the officer's status was not an essential element of the offense and therefore the State was required to prove only "that the defendant knowingly and willfully resisted or obstructed or opposed the officer by offering to do him violence." The trial court denied the motions.
During closing argument, the State told the jury that it had to prove only three elements for the crime of resisting an officer with violence: (1) defendant knowingly and willfully resisted, obstructed or opposed an officer by offering to do violence; (2) the officer was engaged in the lawful execution of a legal duty; and (3) that the victim was an officer. The State emphasized that it need not prove that the defendant knew the victim was an officer, but explained that it was impossible for Polite not to have known. Polite responded by reasserting that the State failed to meet its burden of proving that Polite knew Munoz was an officer. Further, Polite *1110 argued that the evidence indicated that he was struggling to get away from an unknown attacker.
Defense counsel requested a special instruction that the State had to prove the defendant's knowledge of Officer Munoz's status, which was denied by the trial court. Defense counsel then filed a motion for a mistrial based on the trial court's refusal to read the special instruction, which was also denied. Over defense counsel's objection, the trial court read the standard jury instruction on the count for resisting an officer with violence.[4] Although this instruction explains that the State must prove that the defendant knowingly and willfully resisted, it does not include a specific requirement as to the defendant's knowledge of the officer's status. The trial court also instructed the jury on the permissive lesser included offense of resisting an officer without violence under section 843.02, Florida Statutes (2002),[5] and misdemeanor tampering with coin-operated vending machines or parking meters.
The jury convicted Polite of both misdemeanor tampering with a parking meter and felonious resisting an officer with violence. Polite filed a motion for a new trial. The State and Polite reasserted their arguments as to whether knowledge of Officer Munoz's status is an element of resisting an officer with violence. The trial court denied the motion.
On the misdemeanor tampering with a parking meter charge, Polite was sentenced to 227 days' imprisonment. On the felony charge, Polite was sentenced to seven and one half years as a prison releasee reoffender and habitual felony offender with a five-year mandatory minimum term of incarceration.
On appeal, Polite again argued that knowledge of the officer's status is an essential element of the offense of resisting an officer with violence and that the trial court erred in not instructing the jury on this element. See Polite, 933 So.2d at 589. The Third District ultimately affirmed Polite's convictions and sentences, concluding that knowledge of an officer's status is not an element of the crime of resisting an officer with violence under section 843.01. See id.[6] Although the Third District held *1111 that knowledge is not an essential element, the court noted that a defendant may assert his or her lack of knowledge as an affirmative defense to the crime. See Polite, 933 So.2d at 593. However, the court concluded that "the availability of such a defense . . . does not render knowledge an element of the offense itself which must be established by the state." Id. In reaching this conclusion, the Third District certified conflict with the Fifth District's decision in A.F. See id. at 594.

ANALYSIS

I. Principles of Statutory Construction
Because the conflict issue involves the interpretation of a statute, this Court's review is de novo. See Tillman v. State, 934 So.2d 1263, 1269 (Fla.2006). As with all cases of statutory construction, it is the Court's purpose to effectuate legislative intent. See Bautista v. State, 863 So.2d 1180, 1185 (Fla.2003). This is because "legislative intent is the polestar that guides a court's statutory construction analysis." State v. J.M., 824 So.2d 105, 109 (Fla.2002). In construing a statutory provision, the Court first looks to the actual language used in the statute. See State v. Bodden, 877 So.2d 680, 685 (Fla.2004). As this Court has previously stated, "the Legislature generally has broad authority to determine any requirement for intent or knowledge in the definition of a crime. To determine whether the Legislature included a knowledge requirement in any given statute, we first look to the statute's plain language." State v. Giorgetti, 868 So.2d 512, 515 (Fla.2004) (citation omitted). If the plain meaning of the language is clear and unambiguous, then the Court need not delve into principles of statutory construction unless that meaning leads to a result that is either unreasonable or clearly contrary to legislative intent. See State v. Burris, 875 So.2d 408, 410 (Fla.2004). However, if the language is unclear or ambiguous, then the Court applies rules of statutory construction to discern legislative intent. See Bautista, 863 So.2d at 1185.
With respect to criminal statutes, "[o]ne of the most fundamental principles of Florida law is that penal statutes must be strictly construed according to their letter." Perkins v. State, 576 So.2d 1310, 1312 (Fla.1991). In fact, the Legislature has specifically codified this principle of lenity in section 775.021(1), Florida Statutes (2002). "This principle ultimately rests on the due process requirement that criminal statutes must say with some precision exactly what is prohibited." Perkins, 576 So.2d at 1312. Thus, when criminal statutes are subject to competing, albeit reasonable, interpretations, they must be "strictly construed . . . most favorably to the accused." § 775.021(1), Fla. Stat.; accord State v. Byars, 823 So.2d 740, 742 (Fla.2002); Wallace v. State, 724 So.2d 1176, 1180 (Fla.1998).

A. Construction of Section 843.01
Section 843.01 provides in pertinent part:
Whoever knowingly and willfully resists, obstructs, or opposes any officer . . . in the execution of legal process or in the lawful execution of any legal duty, by offering or doing violence to the person of such officer or legally authorized person, is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
§ 843.01, Fla. Stat. Section 843.01 was originally enacted in 1881 and has, remarkably, remained relatively unchanged since that time. In fact, the critical phrase and gravamen of the offense, "knowingly and willfully resists, obstructs, or opposes any [officer]," has been part of the statute *1112 since its inception. Ch. 3276, § 1, Laws of Fla. (1881).
The State argues and the Third District held "that the `plain language' of section 843.01 shows that, the legislature did not include knowledge of the victim's status as an element of the offense," because the adverbs knowingly and willfully only modify the verbs "resists, obstructs, or opposes" rather than the entire phrase. Polite, 933 So.2d at 589. In other words, the State urges an interpretation, which was adopted by the Third District, that the defendant must only knowingly and willfully engage in the proscribed conduct, i.e., resisting, obstructing, or opposing an individual who just so happens to be an officer. See id. at 590.
Conversely, the Fifth District in A.F. expressly held that knowledge of the officer's status is an element of the crime of resisting an officer with violence. 905 So.2d at 1012. Further, both the First and Fourth District Courts of Appeal have assumed, without engaging in statutory interpretation, that the State must prove the defendant's knowledge of the officer's status. See W.E.P. v. State, 790 So.2d 1166, 1172 (Fla. 4th DCA 2001); O'Brien v. State, 771 So.2d 563, 564 (Fla. 4th DCA 2000); Cooper v. State, 742 So.2d 855; 857, 857 n. 2 (Fla. 1st DCA 1999) (comparing resisting an officer without violence under section 843.02, which, despite the text's omission of an express knowledge requirement, has been interpreted as requiring that the person charged have knowledge that the person he or she is resisting is an officer, with resisting an officer with violence under section 843.01, which has a specific knowledge requirement).[7] These courts essentially conclude that without knowledge that the victim is an officer, the defendant cannot be found guilty of the crime of resisting an officer with violence.
We conclude that the statute is subject to competing reasonable interpretations as to whether knowledge of the officer's status is an essential element of resisting an officer with violence. Thus, at the very least, the provision is ambiguous and must be strictly construed most favorably to the accused. See § 775.021(1), Fla. Stat.; Perkins, 576 So.2d at 1312. However, even beyond this fundamental tenet of Florida law regarding the construction of criminal statutes, which weighs in favor of the defendant, the application of the rules of statutory construction lead us to conclude that "knowingly and willfully" modifies the entire phrase "resisting, obstructing or opposing an officer," including both the verbs "resist, obstruct, or oppose" and the object "an officer."
As this Court observed in determining whether resisting an officer with violence was a specific or general intent crime, the statute's plain language reveals that a defendant must have a "general intent to `knowingly and willfully' impede an officer in the performance of his or her duties." Frey v. State, 708 So.2d 918, 920 (Fla.1998) (emphasis supplied). "Knowing" has been defined as "having or showing awareness or understanding; well-informed . . . Deliberate; conscious." Black's Law Dictionary 888 (8th ed. 004). "Willful" conduct has been defined as "Voluntary and intentional, but not necessarily malicious," id. at 1630, and "Proceeding from a conscious motion of the will; voluntary; knowingly; deliberate. Intending the result which actually comes to pass; designed; intentional; purposeful; not accidental or involuntary." Jones v. State, 912 So.2d 686, 688 (Fla. 1st DCA 2005) (quoting Black's Law *1113 Dictionary 1599 (6th ed. 1990)). Based on these common definitions, it would be difficult for one to impede an officer in the performance of his or her duties both "knowingly," having an awareness or understanding, and "willfully," intending the result which actually comes to pass, without knowing that the person he or she is impeding is an officer.
On the other hand, a construction like that of the Third District, namely, that the terms "knowingly and willfully" only modify the verbs "resist, obstruct or oppose," would render the words "knowingly and willfully" superfluous. For instance, the word "resist" has been defined as follows: "to exert force in opposition . . . to exert oneself so as to counteract or defeat." Merriam Webster's Collegiate Dictionary 994 (10th ed. 2001). The very nature of "resisting" therefore implies an element of knowledge, i.e., an awareness that another is exerting force and an intent to counter that force in opposition. If this Court were to adopt the Third District's construction, we would be disregarding the maxim of statutory construction that courts are required to give significance and effect to every word or phrase in a statute. See Gulfstream Park Racing Ass'n, Inc. v. Tampa Bay Downs, Inc., 948 So.2d 599, 606 (Fla.2006).
Moreover, without requiring that the defendant know the person he or she is resisting is a police officer, an argument could be made that the statute does not put the defendant on adequate notice of what conduct is prohibited, which is contrary to a basic tenet of due process that criminal statutes must state with some precision exactly what is prohibited. See Perkins, 576 So.2d at 1312.

B. Construction of Section 843.02
Our statutory construction analysis is further facilitated by an interpretation of the essential elements of the offense of resisting an officer without violence under section 843.02, Florida Statutes (2002), a permissive lesser included offense of resisting an officer with violence under section 843.01. See State v. Espinosa, 686 So.2d 1345, 1347 (Fla.1996). Section 843.02 states that "[w]hoever shall resist, obstruct, or oppose any officer . . . in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree." Similar to section 843.01, this provision specifies that it is unlawful to "resist, obstruct or oppose any officer." §§ 843.01, 843.02, Fla. Stat. However, unlike section 843.01, there is no language in section 843.02 requiring the defendant to act "knowingly and willfully." Yet courts, including the Third District in this case, have interpreted section 843.02 as requiring proof of a defendant's knowledge of the officer's status. See Polite, 933 So.2d at 592-93; Cooper, 742 So.2d at 857; Harris v. State, 935 So.2d 1259, 1262 (Fla. 5th DCA 2006).
The Third District in Polite reasoned that knowledge must be read into section 843.02, even though the provision is silent as to such a requirement, because "the forbidden conduct would not otherwise be necessarily improper." 933 So.2d at 593. The court explained that, without the element of knowledge, "one would be subject to prosecution for entirely innocent behaviorsuch as, for example, simply walking away from an unidentified someone who ordered him to remain still." Id. In other words, if the individual does not know that the person is a police officer, there may be circumstances where it is permissible to refuse to leave the area, resist being handcuffed (without violence) or even flee the scene. As the court in Cooper observed, if the defendant believed he or she was being detained by a drug dealer, he or she would have the right to resist the detention. 742 So.2d at 857-58. Contrary to the Third *1114 District's analysis, we believe this argument is equally applicable to the crime of resisting an officer with violence. For instance, if a defendant does not know that the person attempting to detain him or her is a police officer, that person has every reason to resist any effort at restraint or detention.
Moreover, such a construction would give rise to the anomalous result that the more serious crime would not require knowledge of the victim's status even though it contains the words "knowingly and willfully," but the less serious crime would require such knowledge even absent a knowing requirement written into the statute. Cf. Thompson v. State, 695 So.2d 691, 693 (Fla.1997); Chicone v. State, 684 So.2d 736, 742 (Fla.1996). In Thompson, the Court concluded that it would be incongruous not to require knowledge of the victim's status for attempted murder of a law enforcement officer, which was classified as a life felony, where the offense of attempted first-degree murder in general is only punishable by a maximum of thirty years in prison. See 695 So.2d at 693. The Court further stated that any other result would "ignore the basic tenet of statutory construction that courts are constrained to avoid a construction that would result in unreasonable, harsh, or absurd consequences." Id.
These principles are equally applicable to the analysis here. Section 843.02 is a permissive lesser included offense of section 843.01the former a first-degree misdemeanor subjecting a nonhabitual offender to a maximum of one year in prison and the latter a third-degree felony subjecting a nonhabitual offender to a maximum of five years in prison. See § 775.082, Fla. Stat. (2002).[8] Moreover, as previously mentioned, the Legislature requires a defendant to act "knowingly and willfully" in resisting an officer with violence, but clearly omits any such requirement in resisting an officer without violence. According to the principles this Court first stated in Chicone and reiterated in Thompson, it would be incongruous to require knowledge of the officer's status for resisting an officer without violence, a first-degree misdemeanor, but not require knowledge of the victim's status for resisting an officer with violence, a third-degree felony. Thompson, 695 So.2d at 693; Chicone, 684 So.2d at 742. Concluding otherwise would arguably lead to an unreasonable and harsh result, where a defendant's required mental state for a felony offense is less than that required for a permissive lesser included misdemeanor offense. Thompson, 695 So.2d at 693.

C. Related Statutory Provisions
A review of related statutory provisions involving crimes against law enforcement officers further supports the construction that knowledge of an officer's status is an essential element of the offense of resisting an officer with violence. See T.R. v. State, 677 So.2d 270, 271 (Fla.1996) (reiterating that courts must construe related statutory provisions in harmony with one another). Section 843.01 is part of a statutory scheme that is designed to protect law enforcement officers and ensure that they are able to perform their duties. For example, section 784.07(2), Florida Statutes (2002), states that "[w]henever any person is charged with knowingly committing an assault or battery upon a law enforcement officer . . . while the officer . . . is engaged in the lawful performance of his or her duties, the offense for which the person is charged shall be reclassified."[9] For purposes *1115 of our analysis, it is significant that we have previously held that knowledge of the officer's status is an essential element of this offense even though section 784.07(2) lacks specific language to that effect. See Thompson, 695 So.2d at 692; Street v. State, 383 So.2d 900, 900 (Fla. 1980).[10]
The language of section 784.07 is almost identical to that of section 843.01both statutes include the word "knovvingly," followed by a proscribed act upon an officer. Compare § 784.07(2), Fla. Stat. ("Whenever any person is charged with knowingly committing an assault or battery upon a law enforcement officer. . . .") with § 843.01, Fla. Stat. ("Whoever knowingly and willfully resists, obstructs, or opposes any officer. . . ."). Although the actus reus or proscribed acts are distinct, i.e., "assault and battery" versus "resists, obstructs, or opposes," the requisite mens rea or mental state is comparable. Therefore, because the Court has previously held that "knowingly" in section 784.07 includes knowledge of the officer's status, it would be unreasonable for the Court not to similarly conclude that "knowingly and willfully" in section 843.01 includes knowledge of the officer's status.
We acknowledge the Third District's observation "that when the legislature determines that knowledge of an officer's status is an element of an offense, it has expressly included such a condition." Polite, 933 So.2d at 591. The Third District referred to section 784.081(2), Florida Statutes (2000), which reclassifies the offense of assault or battery upon any employee of the state system of education "when the person committing the offense knows or has reason to know the identity or position or employment of the victim,"[11] and section 316.1935(1), Florida Statutes (2005), which states that "[lit is unlawful for the operator of any vehicle, having knowledge that he or she has been ordered to stop such vehicle by a duly authorized law enforcement officer, willfully to refuse or fail to stop the vehicle in compliance with such order."
The Third District is correct that the Legislature clearly intended to make knowledge of the school board official's or the officer's status an element of these offenses and failed to include similar language in section 843.01. Certainly, we have applied the principle that the Legislature "`knows how to' accomplish what it has omitted" in a provision, in construing related statutes. Cason v. Fla. Dep't of Mgmt. Servs., 944 So.2d 306, 315 (Fla. 2006) (quoting Rollins v. Pizzarelli, 761 So.2d 294, 298 (Fla.2000)). However, the *1116 relevance of this discrete statutory construction principle is tempered by the fact that courts have interpreted several other provisions directly relating to crimes against law enforcement officers as requiring knowledge of an officer's status despite a lack of specific language to that effect. See Thompson, 695 So.2d at 692 (concluding that battery on a law enforcement officer under section 784.07(2) and attempted murder of a law enforcement officer under section 784.07(3) include knowledge of the officer's status as an essential element); Cooper, 742 So.2d at 858 (concluding that resisting an officer without violence under section 843.02 requires proof of defendant's knowledge of officer's status). Thus, the Legislature's failure to expressly include knowledge of the officer's status as an essential element in section 843.01 is not dispositive in this case, particularly where the statute was enacted over 120 years ago and has always, since its adoption, included the requirement that the defendant act "knowingly and willfully:"[12]

D. Knowledge of an Officer's Status as an Affirmative Defense
Importantly, this is not a case where the State is arguing that knowledge of the officer's status is unrelated to the crime. The State's position is that although knowledge of the victim's status as a law enforcement officer is not an essential element *1117 of the offense, it can be raised as an affirmative defense.
The State's argument rests on section 776.051(1), Florida Statutes (2002), a provision in the chapter concerning the justifiable use of force. Section 776.051(1), entitled "Use of force in resisting or making an arrest; prohibition," provides that
[a] person is not justified in the use of force to resist an arrest by a law enforcement officer who is known, or reasonably appears, to be a law enforcement officer.
Although this Court previously determined that section 776.051(1) is to be read in pari, materia with section 843.01, Tillman, 934 So.2d at 1270 n. 4, we also explained that this section "abrogates the common-law right to resist an illegal arrest with force." Id. at 1269. Essentially, the provision is a limitation on the use of an affirmative defense, in that it "forecloses the defense of justifiable use of force by a defendant who resists an arrest by a law enforcement officer." Id. Furthermore, we stated that this provision "is limited by its plain terms to situations involving an actual arrest." Id. at 1270 (emphasis supplied). Therefore, section 776.051(1) cannot provide for an affirmative defense to resisting an officer with violence under section 843.01, a provision which criminalizes violent resistance in both arrest and non-arrest encounters with law enforcement officers.
By arguing that knowledge can be an affirmative defense to the crime, even absent direct statutory authority, the State essentially concedes that knowledge is relevant to the offense of resisting an officer with violence. We agree that it is relevant and reject the State's attempt to shift the burden to the defense to establish that the defendant did not know that the victim was a police officer. Rather, for all the aforementioned reasons, knowledge of the officer's status is an essential element that is part of the State's burden of proof.

F. Countervailing Public Policy Considerations
Lastly, Polite and the State extensively argue about the public policy concerns at issue in this case. Polite asserts that the Third District's decision favors the protection of law enforcement officers at the expense of the citizenry who are "placed in the untenable position of submitting to anyone who claims to be a police officer or face the possibility of extended incarceration for violating section 843.01." And such a concern is logical given the "all too sad fact that persons have been victimized as a result of their trusting criminals who were impersonating police officers to facilitate crimes." W.E.P., 790 So.2d at 1172; see also A.F., 905 So.2d at 1012. Conversely, the State asserts that the protection of law enforcement officers, especially those who are undercover or enforcing an unpopular law, supersedes the rights of the citizenry and that, rather than resort to violence or self-defense on the street, the proper forum for such grievances is in the courts.
There is validity to both of these public policy considerations. However, we have repeatedly explained that in matters of statutory construction "it is not this Court's function to substitute its judgment for that of the Legislature as to the wisdom or policy of a particular statute." Tillman, 934 So.2d at 1270 (quoting State v. Rife, 789 So.2d 288, 292 (Fla.2001)). Nevertheless, a construction of the statute that requires the State to establish the defendant's knowledge of the victim's status as a law enforcement officer appears to favor another important public policy considerationto ensure that officers, especially those in undercover situations, take steps to properly identify themselves and make certain that an individual who is about to be stopped, frisked, detained, restrained, searched, seized, arrested, or otherwise *1118 approached in an official capacity knows the officer's status.

II. This Case
In this case, there are certainly facts to suggest that Officer Munoz took steps to identify himself as a police officer before attempting to arrest the defendant. However, there are also facts to suggest that a jury, if properly instructed and not affirmatively misled by the prosecution, could have determined that the State failed to meet its burden on the element of whether Polite knew that the person who attempted to detain him was a police officer. Indeed, when a uniformed officer ultimately arrested Polite and identified himself, Polite not only submitted to that authority without a struggle but told the officer that "he wasn't sure that [Officer Munoz] was a policeman."
Furthermore, the standard jury instructions in this case insufficiently instructed the jury on the State's burden of proof. We cannot agree with the Fourth District in O'Brien, which held that the standard jury instructions, simply by mirroring the statutory language, adequately advised the jury that knowledge of the status of the victim was an essential element of the crime. See 771 So.2d at 565. In fact, the State relied on the standard jury instructions in this case to argue to the jury that it was not required to prove knowledge. The ambiguity in the current standard jury instructions, which are nothing more than a verbatim restatement of the statute, required the trial court to give the special instruction requested by the defendant, which would have prevented the State from misleading the jury as to its burden of proof. Thus, we cannot conclude that this error in failing to properly instruct the jury is harmless beyond a reasonable doubt.[13]

CONCLUSION
Based on the foregoing analysis, including a review of the text and related statutory provisions involving crimes against law enforcement officers, and applying additional statutory construction principles, we conclude that knowledge of the officer's status is an essential element of the crime of resisting an officer with violence under section 843.01. Therefore, we quash the decision of the Third District in Polite and approve the decision of the Fifth District in A.F., to the extent it held that knowledge of the officer's status is an essential element of the offense. We remand with instructions to vacate Polite's conviction for resisting an officer with violence under section 843.01 and to grant a new trial consistent with this opinion.
It is so ordered.
LEWIS, C.J., and ANSTEAD, QUINCE, CANTERO, and BELL, JJ., concur.
WELLS, J., concurs in result only with an opinion.
WELLS, J., concurring in result only.
I concur in result only in this case. I concur in the result because I believe the result is required by the majority decision in Thompson v. State, 695 So.2d 691 (Fla. 1997).
NOTES
[1] We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.
[2] Although Officer Santiago was technically on bicycle patrol, he was in his law enforcement vehicle when he came into contact with Polite.
[3] As to the count of tampering with a parking meter, Polite argued that there was no direct evidence that he broke into the machine.
[4] The court read the following standard jury instruction for resisting an officer with violence:

1. GARY LAMAR POLITE knowingly and willfully [resisted] [obstructed] [opposed] OFFICER M. MUNOZ by [offering to do him violence] [doing violence to him].
2. At the time OFFICER M. MUNOZ was engaged in the [execution of a legal process] [lawful execution of a legal duty].
3. At the time OFFICER M. MUNOZ was an officer.
[5] The court read the following standard jury instruction for resisting an officer without violence:

1. GARY LAMAR POLITE [resisted] [obstructed] [opposed] OFFICER M. MUNOZ.
2. At the time OFFICER M. MUNOZ was engaged in the [execution of a legal process] [lawful execution of a legal duty].
3. At the time OFFICER M. MUNOZ was an officer.
[6] The decision currently under review is actually the third decision issued by the. Third District in Polite's appeal. In its first decision, the Third District per curiam affirmed the convictions and sentences. See Polite v. State, 29 Fla. L. Weekly D1932 (Fla. 3d DCA Aug.11, 2004) (citing O'Brien v. State, 771 So.2d 563 (Fla. 4th DCA 2000)). Polite moved for rehearing and the Third District set aside its previous decision and substituted another for it. See Polite v. State, 934 So.2d 496, 497 (Fla. 3d DCA 2005) (reversing the conviction and concluding that "[t]here is no doubt [knowledge] is an indispensable element of the crime in question"). After the second decision, the State moved for rehearing and the Third District replaced its second decision with the decision currently pending review in this Court.
[7] Interestingly, in its second decision on appeal, the Third District relied on Cooper in holding that there is "no doubt" that knowledge is an essential element of the crime and that the prosecutor had "erroneously informed the jury that it was not necessary to establish this fact to convict the defendant." Polite, 934 So.2d at 497.
[8] Although section 775.082 was amended in 2005, see ch. 2005-28, § 4, Laws of Fla., the revision does not affect the specific text or principles for which this provision is cited.
[9] Although section 784.07(2) was amended in 2002, see ch. 2002-209, §§ 1-2, Laws of Fla., in 2006, see ch. 2006-427, § 1, Laws of Fla., and again in 2007, see ch. 2007-112, § 1, Laws of Fla., the revisions did not amend the text mentioned above or the principles for which the provision was cited.
[10] Additionally, this Court previously held that knowledge of an officer's status was also an essential element of attempted murder of a law enforcement officer under the 1993 version of section 784.07(3). See State v. Barnum, 921 So.2d 513, 517 (Fla.2005), cert. denied, ___ U.S. ___, 127 S.Ct. 493, 166 L.Ed.2d 365 (2006); Thompson, 695 So.2d at 692. Although the 1993 version of section 784.07(3) did not include specific language regarding knowledge of the officer's status, we nevertheless concluded that if the underlying crime of battery required the defendant to know of the officer's status then the greater offense of attempted murder of an officer should also require such knowledge. See Thompson, 695 So.2d at 692. We note that section 784.07(3) has been amended since 1993 and no longer includes the offense of attempted murder of a law enforcement officer. See § 784.07(3), Fla. Stat. (2006).
[11] Although section 784.081 has been subsequently amended, see ch. 2001-68, § 11, ch. 2002-387, § 1037, ch. 2004-41, § 19, ch, 2004-276, § 1, ch. 2004-350, § 48, Laws of Fla., these amendments did not revise the language cited above or the principles for which this statute is cited.
[12] We reject the Third District's reliance on the United States Supreme Court's decision in United States v. Feola, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975). In Feola, the Court construed 18 U.S.C. § 111 (2000), not to require knowledge of an officer's status. See id. at 684. However, the federal statute is distinguishable from section 843.01 because it does not include the requirement that the defendant act "knowingly and willfully." See 18 U.S.C. § 111(a)(1) ("Whoever . . . forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section. . . ."). Moreover, the counterpart to this federal statute is not only section 843.01 but also 787.07(2), the provision addressing assault and battery on a law enforcement officer, which we have already held under Florida law requires proof that the defendant knew of the officer's status. See Thompson, 695 So.2d at 692.

We similarly reject the Third District's reliance on a number of distinguishable out-of-state cases. Several of these decisions are distinguishable because the courts construed statutes that excluded the terms "knowingly and willfully." See Jackson v. State, 734 A.2d 641, 1999 WL 591502, *1 (Del.1999) ("A person is guilty of resisting arrest when the person intentionally prevents or attempts to prevent a peace officer from effecting an arrest. . . ."); Powell v. State, 806 So.2d 1069, 1075 n. 2 (Miss.2001) ("It shall be unlawful for any person to obstruct or resist by force, or violence, or threats, or in any other manner, his lawful arrest or the lawful arrest of another person by any state, local or federal law enforcement officer. . . ."). Additionally, the Third District noted several states that have statutes that expressly stated knowledge was an affirmative defense. See State v. Daniels, 220 Neb. 480, 370 N.W.2d 179, 181-82 (1985) ("It is an affirmative defense to prosecution under this section if the peace officer involved was out of uniform and did not identify himself or herself as a peace officer by showing his or her credentials to the person whose arrest is attempted."); Me.Rev.Stat. Ann. 17-A, § 751-A(2) (2006) ("It is a defense to prosecution under this section that the person reasonably believed that the person attempting to effect the arrest or detention was not a law enforcement officer."). Importantly, as the Third District acknowledged, the several out-of-state cases that involved provisions nearly identical to section 843.01 construed the provisions in line with our decision today. See Phillips v. State, 267 Ga.App. 733, 601 S.E.2d 147, 150 (2004) (rejecting defendant's argument that State failed to prove that he knew the victim was a police officer, where defendant admitted at trial that he ran when he realized the officers recognized him because of outstanding warrants for his arrest); Stack v. State, 534 N.E.2d 253, 255 (Ind.Ct. App.1989) (concluding that defendant had to know or have reason to know of officer's status, where statute required the defendant to act "knowingly and intentionally").
[13] We also refer this issue to the Supreme Court Committee on Standard Jury Instructions in Criminal Cases to propose a revision to the standard jury instructions to make clear that knowledge of the officer's status is an essential element of the offense of resisting an officer with violence under section 843.01.